IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Jeffrey J. GRADY, Attorney at Law.

Supreme Court

*No. 93–2860–D. Submitted on briefs October 13,
1994.—Decided November 17, 1994.*

(Also reported in 523 N.W.2d 564.)

For Jeffrey J. Grady there were briefs by *Daniel W. Hildebrand* and *Ross & Stevens, S.C.,* Madison.

For the Board of Attorneys Professional Responsibility there was a brief by *Robert G. Krohn* and *Nowlan & Mouat,* Janesville.

PER CURIAM. *Attorney disciplinary proceeding; attorney's license suspended.*

This is an appeal and cross-appeal from the referee's recommendation that the court suspend the license of Jeffrey J. Grady to practice law in Wisconsin for a minimum period, specified as 30 days, as discipline for professional misconduct. That misconduct consisted of the failure to exercise reasonable diligence and promptness in representing clients, entering into a prohibited business transaction with a client and failing to hold in a trust account a client's share of estate distributions. Attorney Grady appealed from the recommendation for discipline, asserting that his misconduct warrants discipline no more severe than a public reprimand. In the alternative, Attorney Grady took the position that if a suspension is to be ordered, it be the 30-day suspension specified by the referee. The Board of Attorneys Professional Responsibility (Board) cross-appealed from the referee's specification of 30 days as the minimum period of license suspension imposed in attorney discipline proceedings, asserting that the minimum period is 60 days.

We determine that the seriousness of Attorney Grady's misconduct warrants the suspension of his license for the minimum period. As the court stated in *Disciplinary Proceedings Against Schnitzler,* 140 Wis. 2d 574, 412 N.W.2d 124 (1987), the minimum period of a license suspension is 60 days.

Attorney Grady was admitted to practice law in Wisconsin in 1979 and practices in Madison. In 1992 the court publicly reprimanded him for failing to act with reasonable diligence and promptness in prosecuting an action he had brought on behalf of several clients, which resulted in its dismissal on the merits, and for failing to respond to repeated requests from the Board for information in its investigation of the matter. *Disciplinary Proceedings Against Grady,* 172 Wis. 2d 185, 493 N.W.2d 66 (1992). In the instant proceeding, the referee, Attorney Cheryl Rosen Weston, made findings of fact pursuant to the parties' stipulation concerning Attorney Grady's conduct in the probate of two estates and his dealings with one of the heirs of those estates.

In early 1988, Attorney Grady was representing the personal representative in the estates of a woman and her son. One of the heirs of those estates, the son and brother of the decedents, respectively, had been divorced and was subject to a contempt order for his failure to make court-ordered support payments. That order sentenced him to 90 days in jail but stayed the sentence to give him the opportunity to purge his contempt by making weekly payments of current support and support arrearages. The order directed the heir to pay his share of the two pending estates to the clerk of courts toward support arrearages owing as of the date of disbursement of the estate funds. Attorney Grady was not involved in that family court proceeding but,

because the order directed the heir to pay into court his share of the estate distributions, a copy of the court order was sent to Attorney Grady as attorney for the estates.

When the heir failed to make the purge payments, the court issued a bench warrant and commitment, sending a copy to Attorney Grady, and the heir was arrested in September, 1988. Attorney Grady first met the heir while he was being held in jail for violation of the support order and agreed to serve as his attorney to obtain his release. In order to obtain his release from jail, the client previously had agreed with the county corporation counsel for payment of his past due child support obligations owed to the State of Wisconsin; the matter of arrearages owed to the client's former spouse was not pursued because she had not requested the corporation counsel's assistance and had left the state and her whereabouts were unknown. At the time, the support arrearages owing to the state and to the client's former spouse exceeded $7,300.

Hoping to avoid his client's immediate support payment obligation and in order to be able to make payments to his client's creditors, Attorney Grady decided not to disburse the estate proceeds directly to his client. Instead, he suggested that the client pay him a "lifetime retainer" in the amount of the inheritance. Accordingly, the brother's estate issued a check December 23, 1988 in the amount of $6,000 payable to Attorney Grady's trust account; a second check dated May 10, 1989 in the amount of $400 was made payable to the client and Attorney Grady's trust account. Attorney Grady endorsed those checks and initially deposited them in his client trust account but thereafter removed those funds and placed them in his general

law office operating account, which did not earn interest.

When he received those funds, Attorney Grady had no expectation that he would charge the client attorney fees unless some significant matters arose requiring his attention. From the outset, Attorney Grady did not consider him a paying client, no retainer agreement was entered into and he kept no time records concerning any legal work performed on his behalf. Attorney Grady never billed his client nor did he charge him for any services in connection with the support matter.

In November, 1991, the family court issued an order to show cause requiring the client to appear, as child support arrearages then exceeded $6,000. From time to time thereafter, Attorney Grady negotiated with the corporation counsel, who ultimately agreed to accept the arrearages owing to the state as full payment of the client's total obligation.

In January, 1992, Attorney Grady and his client signed an agreement stating that the total distribution from the two estates was approximately $6,400, that the client owed the state approximately $3,000, which would be paid from his inheritance, and that even though there were support arrearages owing to his former spouse, Attorney Grady would pay the client the rest of the inheritance in $250 monthly installments from January through May, 1992 and the balance at the end of that period. Attorney Grady did not make the payments as specified in that agreement but he did give portions of the inheritance directly to the client and paid several of the client's bills at various times between December, 1991 and November 24, 1992. Those payments totaled approximately $4,000 and the majority of them were paid from Attorney Grady's law office account, not his trust account.

In May, 1992, the court issued another order to show cause in response to the client's failure to make support payments. Pursuant to an agreement Attorney Grady reached with the corporation counsel, a written order issued in July, 1992 establishing that the arrearages owing to the state were approximately $3,000, that the client would pay $250 per month toward those arrearages, commencing July, 1992, and that he would pay the state arrearages in full upon disbursement of his share of his brother's estate. In fact, the client's $6,000 distribution from that estate had been given to Attorney Grady in December, 1988.

When the client failed to make the July, 1992 monthly payment pursuant to the court's order, an order to show cause was scheduled for November 6, 1992. At the hearing on that order, it appeared that no payments had been made pursuant to the July, 1992 order but the matter was dismissed by virtue of the tendering of a $1,000 check from the client's inheritance and his agreement to pay the balance of the state arrearages within 90 days. The $1,000 check was returned for insufficient funds and was replaced by a check drawn on Attorney Grady's law office account. After a subsequent payment was made in March, 1993, arrearages of $1,000 remained. A stipulated order entered in May, 1993 required the client to pay $200 per month toward that balance and full payment was made by the end of August, 1993.

In the matter of the two estates, which had been commenced as informal administrations in April, 1988, when their probate was not completed and they were not closed timely, the probate court commissioner sent Attorney Grady letter requests to close those estates in 1989, 1990 and 1991. At a hearing in March, 1991, the circuit court ordered that Attorney Grady be removed

from the estates if papers were not filed within two weeks. Notwithstanding his failure to file the necessary papers, Attorney Grady continued as attorney for those estates and in March, 1993, the probate court commissioner directed Attorney Grady to close the estates within 30 days or explain in writing his inability to do so. Shortly before the disciplinary hearing in this proceeding on February 17, 1994, after the estates had been open for almost six years, all of the necessary work on the estates had been performed but receipt of closing certificates from the Department of Revenue had not been received.

The referee concluded, as was admitted during the course of the disciplinary proceeding, that Attorney Grady failed to act with reasonable diligence and promptness in representing the estates and the heir, in violation of SCR 20:1.3,[1] and that his "lifetime retainer" agreement constituted a business transaction with his client proscribed by SCR 20:1.8(a).[2] The referee also concluded that Attorney Grady violated SCR

---

[1] SCR 20:1.3 provides:

**Diligence**
A lawyer shall act with reasonable diligence and promptness in representing a client.

[2] SCR 20:1.8 provides:

**Conflict of interest: prohibited transactions**
(a) A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:
(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client;
(2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and
(3) the client consents in writing thereto.

20:1.15(a) and (b)[3] by failing to keep his client's share of the estate distributions in a trust account, noting that, even though he characterized those funds as a "lifetime retainer," Attorney Grady testified that he never intended to keep the inheritance as a legal fee. Consequently, the referee concluded, both the client and Attorney Grady viewed those funds as belonging to the client and, as such, they were required to be kept in a trust account.

Although the referee concluded that Attorney Grady did not engage in a conflict of interest, contrary to SCR 20:1.7(b),[4] because there was no evidence estab-

---

[3] SCR 20:1.15 provides:

**Safekeeping property**

(a) A lawyer shall hold in trust, separate from the lawyer's own property, property of clients or third persons that is in the lawyer's possession in connection with a representation. All funds of clients paid to a lawyer or law firm shall be deposited in one or more identifiable trust accounts as provided in paragraph (c) maintained in a bank, trust company, credit union or savings and loan association authorized to do business and located in Wisconsin, which account shall be clearly designated as "Client's Account" or "Trust Account" or words of similar import, and no funds belonging to the lawyer or law firm except funds reasonably sufficient to pay account service charges may be deposited in such an account. . . ."

"(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person in writing. . . .

[4] SCR 20:1.7 provides:

**Conflict of interest: general rule**

. . .

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents in writing after consultation. When representation of multiple clients in a single matter is undertaken,

lishing that his representation of the client would have been adversely affected when he arranged to have the use of the client's inheritance for a period of time, the referee did conclude that the so-called "lifetime retainer" constituted a prohibited transaction under SCR 20:1.8(a), as Attorney Grady had what amounted to an interest-free loan from his client until he paid out all of the inheritance to the client or on the client's behalf.

The referee further concluded that the Board failed to establish its allegations that Attorney Grady counseled his client to commit fraud, in violation of SCR 20:1.2(d),[5] and himself engaged in conduct involving fraud and dishonesty, in violation of SCR 20:8.4(c),[6] by diverting the estate distributions to his law office account. Because there was no evidence presented concerning what representations Attorney Grady might have made to the family court or to the corporation

the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

[5] SCR 20:1.2 provides:

**Scope of representation**

. . .

(d) A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent, but a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning or application of the law.

[6] SCR 20:8.4 provides:

**Misconduct**
It is professional misconduct for a lawyer to:

. . .

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

counsel, the referee was unable to conclude that his conduct was fraudulent or misrepresentational.

In determining discipline to recommend for Attorney Grady's professional misconduct, the referee considered his lack of diligence in completing the two estates and in disbursing their proceeds to his client as significant violations of the rules of professional conduct but noted that his conduct was not initially undertaken for the purpose of benefiting himself at his client's expense but more likely was the result of inattentiveness. The referee also acknowledged the favorable character testimony of three witnesses appearing on Attorney Grady's behalf.

The referee also considered, presumably as an aggravating factor, that Attorney Grady previously had been disciplined for misconduct involving, in part, the lack of diligence. She rejected Attorney Grady's attempt to minimize the importance of that prior discipline by the fact that the misconduct considered in this proceeding occurred before the public reprimand was issued in the prior proceeding. In that regard, the referee observed that Attorney Grady himself contacted the Board in October, 1988 to report his possible misconduct in the matter that led to the prior disciplinary proceeding and, consequently, the investigation of that conduct and the proceeding itself were pending throughout the time Attorney Grady was probating the two estates and representing the heir in the matters considered in the instant proceeding. Thus, regardless of the fact that the public reprimand had not yet been imposed in the prior proceeding, Attorney Grady had been confronted with the fact that lack of diligence could constitute misconduct and warrant the imposition of discipline. Moreover, the pending proceeding did

not deter him from engaging in the conduct considered here.

As discipline for Attorney Grady's misconduct established in this proceeding, the referee recommended a 30-day license suspension "as the lowest form of censure beyond a reprimand." The referee considered a 30-day license suspension to constitute the minimum license suspension, based on the court's suspension of an attorney's license for 30 days in *Disciplinary Proceedings Against Nora,* 173 Wis. 2d 660, 495 N.W.2d 99 (1993). Noting that the discipline imposed in *Nora* is at odds with the court's statement in *Schnitzler, supra,* that a minimum license suspension henceforth would be for 60 days, the referee expressed her expectation that the court would clarify what constitutes a minimum license suspension.

There is no inconsistency between *Schnitzler's* establishment of a 60-day license suspension as the minimum suspension to be imposed as attorney discipline and the 30-day license suspension imposed in *Nora*. *Nora* was a reciprocal discipline proceeding in which the court imposed discipline in response to a 30-day license suspension imposed on the attorney by another jurisdiction. The court suspended Attorney Nora's license for 30 days because the rule providing for reciprocal discipline specifies the imposition of "identical" discipline. SCR 22.25(5).[7] Except as pro-

---

[7] SCR 22.25 provides:

**Reciprocal discipline.**

. . .

(5) Upon the expiration of 20 days from service of the complaint issued under sub. (2), the referee shall file a report with the court recommending the imposition of the identical discipline or medical suspension unless:

vided for reciprocal discipline, the minimum period for which the court will suspend an attorney's license as discipline for misconduct continues to be 60 days.

Turning to Attorney Grady's appeal, we are unpersuaded by his argument that a public reprimand is sufficient discipline based on public reprimands that have been imposed for what he considers misconduct more egregious than his. Further, there is no merit to his argument that his prior discipline should not be considered because the majority of his misconduct established in this proceeding had occurred before the public reprimand was issued in the earlier proceeding. Although that reprimand was not issued until December, 1992, Attorney Grady had reported his conduct for which it was ultimately imposed to the Board in October, 1988, some nine months after he commenced the probate of the two estates and only one month after he undertook to represent the heir in the support matter.

Attorney Grady's alternative argument that if a license suspension is deemed warranted, it be for the 30-day period recommended by the referee has no merit. He presents no persuasive argument for reconsidering the rule established in *Schnitzler.*

The seriousness and extent of Attorney Grady's misconduct warrants the suspension of his license for 60 days. In addition to neglecting the probate of two estates for almost six years, despite numerous reminders from the probate court, Attorney Grady failed to

(a) The procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process;

(b) There was such an infirmity of proof establishing the misconduct or medical incapacity that the referee could not accept as final, the conclusion on that subject; or

(c) The misconduct established justifies substantially different discipline in this state.

make timely payments on his client's past due child support obligations pursuant to court orders he and his client had negotiated, failed to honor his agreement with the client to make periodic payments from estate distributions in his possession and to which the client was entitled, obtained for his own use the client's estate distributions under the guise of a "lifetime retainer" even though he never contemplated billing the client for his representation and never charged the client for it, and retained funds to which the client was entitled in his general law office account rather than a trust account. Those violations of his duty to his clients—the estates and the heir—call for the minimum license suspension.

IT IS ORDERED that the license of Jeffrey J. Grady to practice law in Wisconsin is suspended for a period of 60 days, commencing December 14, 1994.

IT IS FURTHER ORDERED that within 60 days of the date of this order Jeffrey J. Grady pay to the Board of Attorneys Professional Responsibility the costs of this disciplinary proceeding, provided that if the costs are not paid within the time specified and absent a showing to this court of his inability to pay the costs within that time, the license of Jeffrey J. Grady to practice law in Wisconsin shall remain suspended until further order of the court.

IT IS FURTHER ORDERED that Jeffrey J. Grady comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.