In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Tim OSICKA, Attorney at Law:

OFFICE OF LAWYER REGULATION,
Complainant-Respondent,

v.

Tim OSICKA, Respondent-Appellant.

Supreme Court

*No. 2006AP2931–D. Submitted on briefs January 2, 2009.
—Decided May 28, 2009.*

2009 WI 38

(Also reported in 765 N.W.2d 775.)

For the respondent-appellant there was a brief by *Ryan D. Lister,* Wausau, and oral argument by *Ryan D. Lister.*

For the complainant-respondent there was a brief by *Robert G. Krohn* and *Roethe Krohn Pope LLP,* Edgerton, and oral argument by *Robert G. Krohn.*

¶ 1. PER CURIAM. Attorney Tim Osicka has appealed from the report and recommendation of the referee that Attorney Osicka's license to practice law in Wisconsin be suspended for a period of 60 days, that Attorney Osicka be ordered to pay restitution to a former client in the amount of $150, and that he be required to pay the full costs of this disciplinary proceeding.

¶ 2. After consideration of the parties' briefs and our independent review of the matter, we conclude that the referee's findings of fact were not clearly erroneous. We also agree with the referee's conclusions of law, which included determinations that the Office of Lawyer Regulation (OLR) had not proven two of the four counts alleged in its complaint. In light of the fact that Attorney Osicka was shown to have committed only two violations of the Rules of Professional Conduct for Attorneys, willfully failing to disclose information to the OLR during a grievance investigation and failing to comply promptly with a client's requests for information, we conclude that a public reprimand is the appropriate level of discipline in this case. We further determine that Attorney Osicka should be required to pay restitution in the amount of $150 to a former client, and that he should be required to pay the full costs of this

disciplinary proceeding, with the exception of the costs related to the OLR's preparation and filing of its motion for reconsideration/clarification.

¶ 3. Attorney Osicka has been the subject of prior professional discipline. In 2002 he agreed to the imposition of a public reprimand. Public Reprimand of Tim Osicka, 2002–02. The reprimand addressed four separate instances of professional misconduct. In the first matter, Attorney Osicka acknowledged that he had failed to communicate adequately with his client, in violation of former SCR 20:1.4(a), and that he had failed to act with reasonable diligence and promptness, in violation of SCR 20:1.3. In the second matter, Attorney Osicka was found to have violated SCR 20:1.1 (failure to provide competent representation), SCR 20:8.2(a) (making statements regarding integrity of a judge with reckless disregard for truth or falsity), and SCRs 40.15 and 20:8.4(g) (violating the attorney's oath by disrespecting courts). In the third matter, Attorney Osicka was again found to have failed to respond to requests for information from his client, in violation of former SCR 20:1.4(a). Finally, in the fourth matter, Attorney Osicka failed to subpoena a treating physician until an hour prior to a hearing and failed to present any testimony or evidence in support of a motion, in violation of former SCR 20:1.1. He also again violated former SCR 20:1.4(a) by failing to advise his client that she needed to obtain reports from a counselor or she would face contempt sanctions.

¶ 4. The following facts relate to Counts 1 and 2 in the current complaint. L.A. owned and operated a bridal shop under the form of a limited liability company, Lynne's of Wausau, LLC. L.A. was the sole member of the limited liability company. Peoples State Bank (the Bank) held a security interest in certain inventory

and assets of Lynne's of Wausau, LLC. In November 2004 the Bank seized certain inventory and assets of the bridal shop pursuant to a replevin order.[1]

¶ 5. L.A. hired Attorney Osicka to recover some of the seized items. L.A. immediately signed an affidavit prepared by Attorney Osicka, in which she stated that Lynne's of Wausau, LLC, had been dissolved in March 2004 in connection with a bankruptcy petition that had been filed by Attorney John Craven on behalf of both the LLC and L.A. personally. The bankruptcy action filed by Attorney Craven, however, was, in reality, only for L.A. individually, and did not include Lynne's of Wausau, LLC.

¶ 6. The affidavit further stated that after the alleged dissolution of Lynne's of Wausau, LLC, L.A. had started a new business called "Lynne's" or "Lynne's LLC." L.A.'s affidavit asserted that the Bank had improperly seized assets of the new business as well as her own personal items, including medications, contact lenses, and medical records.

¶ 7. By the time of the seizure, however, L.A. had taken only a few steps toward establishing a new business entity. Her business cards still read "Lynne's of Wausau, LLC," and she had not registered a new business entity with the Wisconsin Department of Financial Institutions. Moreover, the bankruptcy court had issued an order or judgment that had not eliminated the Bank's security interest in the assets of Lynne's of Wausau, LLC. L.A. acknowledged that the Bank was entitled to obtain possession of the inventory of Lynne's of Wausau, LLC. She believed, however, that

---

[1] The replevin action was handled by Judge Dorothy Bain, with the exception of a hearing on March 2, 2005, which was handled by Judge Raymond Thums.

139

Attorney Craven had taken care of establishing the new business properly, although she was unaware as to whether he had ever filed anything with the State of Wisconsin in that regard.

¶ 8. Based on what L.A. had told him and sworn to in her affidavit, Attorney Osicka sent a letter on November 12, 2004, to the Bank's counsel, Attorney Timothy Kostka. The letter demanded a return of all inventory that belonged to the new business and of all personal items. Attorney Kostka refused, asserting that the Bank was entitled to seize assets of the new business under the doctrine of successor liability.

¶ 9. Approximately one week later, Attorney Osicka filed a motion in the pending replevin action to vacate or modify the court's replevin order. The OLR alleged that the motion contained a false factual statement, which was that Lynne's of Wausau, LLC, had filed a Chapter 7 bankruptcy and that L.A. had established a new business entity with a new tax identification number. Attorney Osicka asked that this motion be heard as soon as possible because the Bank's seizure of the assets and inventory of the new business had left L.A. unable to conduct her new business.

¶ 10. Apparently in support of the claim that some inventory had belonged to a new business not subject to the Bank's security interest, Attorney Osicka provided to Attorney Kostka certain inventory order forms, envelopes, and tuxedo rental forms that contained the name Lynne's instead of Lynne's of Wausau, LLC.

¶ 11. One day before the motion to reopen the replevin order was to be heard, Attorney Osicka wrote to the circuit court and asked that the hearing not go forward. He argued that L.A. should be able to litigate the alleged destruction of her new business due to the

Bank's allegedly improper seizure of its assets in a separate and distinct lawsuit. The circuit court acceded to Attorney Osicka's request and rescheduled the hearing on his motion for March 2, 2005, nearly three months later.

¶ 12. On January 20, 2005, Attorney Osicka filed a complaint on behalf of L.A. in a new action.[2] The complaint named as defendants both the Bank and Attorney Kostka. It alleged that the defendants had improperly seized and converted L.A.'s personal property, certain assets exempted from seizure due to the prior bankruptcy, and certain inventory items belonging to the new business. The complaint sought replevin of the allegedly wrongly seized items, as well as both compensatory and punitive damages.

¶ 13. The circuit court went forward with the rescheduled hearing in the underlying replevin action on March 2, 2005, with Judge Thums presiding. The court told Attorney Osicka that it needed L.A. to identify the items that she believed should be returned to her. The court ordered that an inventory of the seized items should take place on March 14, 2005. L.A. was to pay a representative to conduct the inventory. The parties were then to exchange inventory lists and other materials. L.A. and Attorney Osicka, however, never went forward with the inventory because L.A. did not have sufficient funds to pay a representative to conduct the inventory.

¶ 14. Because the conversion complaint had named Attorney Kostka as a defendant, the Bank retained new counsel, Attorney Gregory Stacker, to

---

[2] The new case, which will be denominated in this decision as the "conversion action," was also assigned to Judge Dorothy Bain.

represent it in the conversion action. On March 3, 2005, one day after the hearing in the replevin case, the Bank filed a motion to dismiss the conversion action. The motion to dismiss was set for hearing on March 16, 2005.

¶ 15. Neither Attorney Osicka nor L.A. appeared at the March 16, 2005, hearing on the motion to dismiss. Attorney Osicka and his secretary later testified that Attorney Osicka had instructed his secretary on the morning of March 16, 2005, to obtain a postponement of the hearing due to a health problem that Attorney Osicka was experiencing, but the secretary failed to contact the court. The referee did not make explicit findings regarding whether this was in fact what had occurred, but he did "find as a fact that the excuses [given by Attorney Osicka for missing the hearing] are unacceptable."

¶ 16. The circuit court went forward with the hearing in Attorney Osicka's absence. The court orally granted the motion to dismiss and concluded that the complaint filed by Attorney Osicka had been frivolous, although it did not explain the reasons for this finding. The court decided to award judgment to the Bank for its attorney fees and costs against both L.A. and Attorney Osicka, jointly and severally.

¶ 17. On March 17, 2005, Attorney Osicka filed a motion to vacate the order dismissing the conversion action and to consolidate the conversion action with the replevin action. He did not, however, schedule a hearing on the motion. On April 22, 2005, the circuit court issued a written order that dismissed the conversion action. The order found the action was frivolous and imposed attorney fees and costs against L.A. and Attorney Osicka.

¶ 18. On May 17, 2005, Attorney Osicka wrote to the circuit court and asked to schedule his motion to vacate the judgment in the conversion action for a date in July. On May 17 he also wrote to Attorney Kostka about rescheduling the review and inventory of the materials seized by the Bank, although Judge Thums had ordered in the replevin action that this should be accomplished by the end of March. Attorney Kostka refused to produce the seized documents and materials. Attorney Osicka then filed a motion to compel in the replevin action.

¶ 19. On July 20, 2005, the circuit court heard Attorney Osicka's motion to vacate the judgment in the conversion action. The hearing focused on whether Attorney Osicka's failure to appear at the March 16, 2005, hearing had constituted excusable neglect. The court found that it had not been excusable neglect and denied the motion to vacate the judgment, also stating again that it believed the complaint had been frivolous. Although Attorney Osicka stated at the conclusion of the hearing that he had consulted other attorneys in the relevant areas of the law and felt that he was on solid ground in filing the conversion action, the court rejected that assertion.

¶ 20. On July 22, 2005, the circuit court heard the motion to compel in the original replevin action and denied that motion. The court stated that it had been Attorney Osicka, not the Bank, who had failed to comply with the March 2, 2005, order regarding the production and inventory of the seized documents.

¶ 21. With respect to the L.A. matter, the OLR alleged that Attorney Osicka had violated SCR 20:3.1(a)(1)[3] (Count 1) by knowingly advancing an

[3] SCR 20:3.1(a)(1) provides as follows:

143

unwarranted claim, and SCR 20:3.1(a)(2)[4] (Count 2) by knowingly advancing frivolous factual positions that L.A. had created a new business and that the Bank had improperly seized inventory belonging to that new business.

¶ 22. Although the referee acknowledged that Attorney Osicka had been aware of the pending replevin action and had recognized that he had not been required to name Attorney Kostka as a party to the conversion action in order to prove that Attorney Kostka had acted as an agent for the Bank during the seizure of items from L.A.'s place of business, and although the circuit court had stated on two occasions that the conversion complaint had been frivolous, the referee found that the OLR had failed to meet its burden of proof on Counts 1 and 2. The referee relied primarily on the fact that Attorney Osicka's client, L.A., had stated in her affidavit that she had created a new business entity with separate inventory prior to the Bank's seizure, thereby providing a good-faith basis for Attorney Osicka's complaint. The referee further stated that Attorney Kostka "may have had personal knowledge **before** the execution that [L.A.] had separated items between her two entities . . . and personally informed [Attorney] Kostka [of this fact] during the execution itself." (Emphasis in original.) In addition,

---

In representing a client, a lawyer shall not:

(1) knowingly advance a claim or defense that is unwarranted under existing law, except that the lawyer may advance such claim or defense if it can be supported by good faith argument for an extension, modification or reversal of existing law; . . . .

[4] SCR 20:3.1(a)(2) provides that in representing a client, a lawyer shall not "knowingly advance a factual position unless there is a basis for doing so that is not frivolous; . . . ."

144

the referee pointed to the fact that Attorney Kostka acknowledged at the disciplinary hearing that L.A.'s new business could have been established as a sole proprietorship without filing any documents with the state and that he was not familiar with Wisconsin case law regarding successor liability. Further, the referee emphasized that the conversion claim filed by Attorney Osicka had alleged that the Bank's seizure had improperly included L.A.'s personal items, including medication, eyeglasses, personal bills, and her son's school records. The referee stated that the OLR had not provided sufficient evidence to disprove this allegation, indicating that there was a valid basis to the conversion claim drafted and filed by Attorney Osicka.

¶ 23. Count 3 of the OLR's complaint related to its investigation of the grievance concerning the L.A. representation. On August 1, 2005, the OLR sent a letter to Attorney Osicka advising him that the OLR was commencing a formal investigation regarding the L.A. matter based on a grievance by Attorney Stacker. In addition to reminding Attorney Osicka of his duty to cooperate, the OLR's letter asked Attorney Osicka to respond to 14 specific questions and to provide 11 specific documents.

¶ 24. After receiving several extensions of time, Attorney Osicka submitted his written letter response on October 4, 2005. The first paragraph of the letter stated:

> Thank you for the numerous extensions you have given me. I feel it would be unproductive for me to answer all of your questions as you have laid out in your earlier correspondence. Therefore, I will respond as follows, noting that I have provided you file contents from both cases.

The letter then directed the OLR investigator to review the transcript of the March 2, 2005, hearing before Judge Thums. The letter asserted that L.A.'s affidavit had been truthful and that the grievance was actually the result of Attorney Kostka's personal animus toward Attorney Osicka. Accompanying the October 4, 2005, letter was a large packet of documents. The materials were unorganized and did not respond to the OLR's specific requests.

¶ 25. The OLR informed Attorney Osicka that his letter was not responsive to its requests, but Attorney Osicka failed to provide a further response to the grievance. The OLR then filed a motion seeking the temporary suspension of Attorney Osicka's license to practice law in Wisconsin. After this court issued an order to show cause why his license to practice law in this state should not be suspended due to his willful failure to cooperate, Attorney Osicka finally submitted an additional response to the grievance. The OLR then reported his cooperation, and its motion for a temporary suspension was voluntarily dismissed.

¶ 26. Based on these facts, the referee concluded that Attorney Osicka had violated both SCR 22.03(2),[5] which requires an attorney to fully and fairly disclose

[5] SCR 22.03(2) states: Investigation.

Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail a request for a written response. The director may allow additional time to respond. Following receipt of the response, the director may conduct further investigation and may compel the respondent to answer questions, furnish documents, and present any information deemed relevant to the investigation.

all facts relating to alleged misconduct within 20 days after being served with a written request for a response to a grievance, and SCR 22.03(6),[6] which prohibits an attorney from willfully failing to provide relevant information, to answer questions fully or to furnish documents in the course of a grievance investigation. By violating these rules, Attorney Osicka also violated SCR 20:8.4(f),[7] which states that it is professional misconduct to violate, among other things, a supreme court rule regulating the conduct of attorneys.

¶ 27. Count 4 of the complaint pertained to an entirely different representation. In that count the OLR alleged that Attorney Osicka had failed to respond to reasonable requests for information from his client, B.W., in violation of former SCR 20:1.4(a).[8]

¶ 28. B.W. retained Attorney Osicka in February 2005 to file a motion seeking a change in visitation and placement regarding her son. She gave Attorney Osicka a retainer of $1,200. The retainer agreement that she signed stated that Attorney Osicka's hourly rate was $150, that the retainer amount covered eight hours of

---

[6] SCR 22.03(6) states:

> In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance.

[7] SCR 20:8.4(f) provides that it is professional misconduct for a lawyer to "violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers; . . . ."

[8] Former SCR 20:1.4(a) (effective through June 30, 2007) provided: "A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

work, that she was responsible for paying further fees when the retainer was exhausted, and that the initial retainer was "nonrefundable." The referee found that although B.W. signed the retainer agreement in Attorney Osicka's office, she was not given a copy of the agreement at that time. A copy was later sent to her, which, according to B.W., was the first time that she became aware of the "nonrefundable" nature of the initial retainer.

¶ 29. Attorney Osicka prepared the requested motion and a supporting affidavit, which B.W. signed on March 18, 2005. Attorney Osicka also arranged for the appointment of a guardian ad litem for B.W.'s son.

¶ 30. On June 20, 2005, B.W. told Attorney Osicka to put on hold over the summer any further proceedings regarding the motion. In September B.W. left a telephone message for Attorney Osicka indicating that she did not intend to go forward with the motion and asking that he telephone her regarding his fees. When Attorney Osicka did not respond, B.W. left another telephone message. In November B.W. sent a letter to Attorney Osicka in which she requested an itemized billing statement and an accounting of her retainer. B.W. contacted Attorney Osicka's office on five additional dates in November and December 2005, but she did not receive the information she was requesting. The referee found that any responses by Attorney Osicka or his office staff were either untimely or were inadequate. On January 11, 2006, B.W. sent another letter to Attorney Osicka requesting a refund of a portion of her retainer. When Attorney Osicka still failed to respond, B.W. filed a grievance with the OLR.

¶ 31. After the grievance was filed, Attorney Osicka told the OLR that he intended to refund $600 to B.W. When the promised refund had not been made a

month later, the OLR requested a written response to B.W.'s grievance. Attorney Osicka then mailed a check for $600 to B.W. He did not provide any billing statement or any indication as to how he had determined the amount he was refunding to B.W. and the amount he was retaining as a fee.

¶ 32. In a subsequent communication with the OLR, Attorney Osicka stated that although he was entitled to keep the entire retainer since it was "nonrefundable," his practice was to refund a portion of the money "based on the time invested." Attorney Osicka did not produce any documentation showing the amount of time he had spent on B.W.'s case, except for a March 4, 2005, time slip showing three hours of work. He never provided B.W. with any billing statement to show the work that he had done and the time he had spent on her matter.

¶ 33. The referee concluded that by failing to respond to numerous communications from B.W. inquiring about Attorney Osicka's fees, and by failing to provide a billing statement in response to her requests, Attorney Osicka had violated former SCR 20:1.4(a).

¶ 34. The OLR requested that Attorney Osicka's license be suspended for a period of 60 days.

¶ 35. The referee discussed aggravating and mitigating factors in line with the ABA Standards for Imposing Lawyer Discipline. On the aggravating side, the referee noted that Attorney Osicka had been publicly reprimanded for similar conduct in 2002. That prior disciplinary matter had included three violations of former SCR 20:1.4(a) for failing to keep a client reasonably informed about the status of a matter. The referee found that there was a pattern of a lack of communication with clients, which was a concern. The referee also stated that Attorney Osicka had exhibited a

negative, unremorseful attitude in his October 4, 2005, letter to the OLR, in which he stated that it would be "unproductive" to answer the OLR's questions. The referee further noted that this court has expressed a policy of progressive discipline. *See, e.g., In re Disciplinary Proceedings Against Ray,* 2004 WI 45, ¶ 22, 270 Wis. 2d 651, 678 N.W.2d 246.

¶ 36. On the mitigating side, the only factor the referee noted was that there was no evidence of a dishonest or selfish motive in the misconduct.

¶ 37. In the end, the referee made an initial recommendation that the court should suspend Attorney Osicka's license to practice law in Wisconsin for 30 days. He also recommended, without explanation, that the court order Attorney Osicka to pay an unspecified amount of restitution to B.W. Finally, the referee recommended that Attorney Osicka pay the full costs of the disciplinary proceeding.

¶ 38. The OLR filed a motion for reconsideration and clarification regarding the referee's recommendations. It informed the referee that, except in the context of reciprocal discipline, this court does not impose 30–day disciplinary suspensions. *See In re Disciplinary Proceedings Against Grady,* 188 Wis. 2d 98, 108–09, 523 N.W.2d 564 (1994); *In re Disciplinary Proceedings Against Schnitzler,* 140 Wis. 2d 574, 578, 412 N.W.2d 124 (1987). It argued that since the referee apparently believed that a short suspension was appropriate, the recommendation should be for a 60–day suspension. The motion for reconsideration/clarification also argued that the referee should either remove the recommendation for restitution to B.W. or provide a specific amount of restitution.

¶ 39. The referee subsequently issued an amended recommendation in which he now recommended a

60–day suspension as discipline for Attorney Osicka's misconduct. In addition, since the referee found that the only evidence submitted to the OLR showed a total of three hours of work on the B.W. matter, which would equal a total of $450 at the $150 hourly rate specified in the retainer agreement, the referee recommended that the court require Attorney Osicka to pay $150 in restitution to B.W.

¶ 40. Before turning to the challenges that Attorney Osicka makes to the referee's report and recommendation in his appeal, we note the standard of review that we apply in attorney disciplinary proceedings. We affirm a referee's findings of fact unless they are found to be clearly erroneous. *See In re Disciplinary Proceedings Against Inglimo,* 2007 WI 126, ¶ 5, 305 Wis. 2d 71, 740 N.W.2d 125. We review the referee's conclusions of law, however, on a de novo basis. *See In re Disciplinary Proceedings Against Carroll,* 2001 WI 130, ¶ 29, 248 Wis. 2d 662, 636 N.W.2d 718. Finally, we determine the appropriate level of discipline given the particular facts of each case, independent of the referee's recommendation, but benefiting from it. *See In re Disciplinary Proceedings Against Widule,* 2003 WI 34, ¶ 44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶ 41. Only Attorney Osicka appealed from the referee's report and recommendation. The OLR did not appeal. Attorney Osicka's appellate brief does not allege that the referee's factual findings are clearly erroneous. We do not discern that any of the factual findings are clearly erroneous, and we adopt them.

¶ 42. Although neither party has appealed from the referee's conclusions that the OLR did not prove by clear, satisfactory, and convincing evidence that Attorney Osicka had knowingly advanced a claim that was

151

unwarranted under existing law, or that he had knowingly advanced a frivolous factual position, we comment on the referee's determination that there were no violations of former SCRs 20:3.1(a)(1) and (2) with respect to Attorney Osicka's representation of L.A. It should be noted in this regard that there is a difference between a finding in a civil action that an attorney has advanced a frivolous claim or defense in violation of the rules of civil procedure, such as former Wis. Stat. § 814.025, and a finding that an attorney should be subject to professional discipline for knowingly advancing a frivolous claim or defense in violation of SCR 20:3.1(a)(1) or knowingly advancing a frivolous factual position in violation of SCR 20:3.1(a)(2). A violation of the rules of civil procedure is to be determined using an objective standard, while a violation of the Rules of Professional Conduct for Attorneys is to be determined under a subjective standard. *In re Disciplinary Proceedings Against Lauer*, 108 Wis. 2d 746, 757–58, 324 N.W.2d 432 (1982); *see also Widule,* 261 Wis. 2d 45, ¶¶ 29–31. Thus, the finding of frivolousness by the circuit court in the conversion and replevin actions does not, by itself, establish violations of the disciplinary rules by Attorney Osicka.

¶ 43. The tests that we apply in this disciplinary matter are whether there was clear, satisfactory, and convincing evidence that Attorney Osicka knowingly advanced a claim or defense that was unwarranted under existing law or could not be supported by a good-faith argument for an extension, modification or reversal of existing law (SCR 20:3.1(a)(1)), and whether there was clear, satisfactory, and convincing evidence that Attorney Osicka knowingly advanced a factual position without a basis for doing so that was not frivolous (SCR 20:3.1(a)(2)). *See Widule,* 261 Wis. 2d 45,

¶ 31. In other words, the OLR was obligated to show that Attorney Osicka, in fact, knew the claim or factual position he was advancing was unwarranted. *Lauer*, 108 Wis. 2d at 758.

■

¶ 44. The referee concluded that the OLR had not met these standards. This is supported by the referee's finding that the OLR, through the testimony of the attorneys for the Bank, never disproved that the Bank had improperly seized L.A.'s personal property and records that were not subject to its security interest. Similarly, the referee made no finding that Attorney Osicka knew that L.A. had *not started* a new, legally separate business, but nonetheless went forward with his claim that the Bank had improperly seized assets belonging to the new business. To the contrary, the referee pointed out that L.A. had stated in her affidavit that she had created a new business entity with separate inventory. Moreover, the referee found that Attorney Kostka may have had personal knowledge before the execution of the replevin order that L.A. had separated inventory items between her two business entities, but nonetheless participated as an agent of the Bank in the execution of a replevin order that resulted in a seizure of assets without consideration of which entity owned the assets. We agree with the referee that the evidence presented in this proceeding simply did not meet the rather high burden of showing that Attorney Osicka subjectively knew he did not have a good-faith basis for advancing his factual assertions or claims, but nonetheless went forward with those factual assertions and claims.

¶ 45. With respect to Count 3 of the OLR's complaint, Attorney Osicka acknowledges that the referee was justified in determining that he had violated SCR

22.03(2) by failing to fully and fairly disclose all facts and circumstances pertaining to his alleged misconduct within 20 days after being served by ordinary mail with a request for a written response to a grievance. There is no dispute with respect to that part of Count 3.

¶ 46. Attorney Osicka does argue on appeal, however, that although his responses to the OLR's requests for information and documents in its investigation of the L.A. matter were not timely, he should not be found to have violated SCR 22.03(6) because he ultimately did answer all questions and did provide all of the requested documents that were still in existence. He essentially asserts that, even though this court was forced to issue an order to show cause why his license should not be temporarily suspended due to a willful lack of cooperation with the OLR's investigation, there can be no violation of SCR 22.03(6) if the attorney provides the requested information and documents before the actual order of temporary suspension is issued.

¶ 47. This is another version of the argument we rejected in *In re Disciplinary Proceedings Against Lister*, 2007 WI 55, ¶¶ 74–76, 300 Wis. 2d 326, 731 N.W.2d 254. Attorney Osicka's contention would allow attorneys to stonewall and delay the OLR's investigation without fear of discipline so long as they complied with the OLR's information requests the day before their license would be temporarily suspended. The rule, however, does not require compliance only after this court issues an order to show cause. It demands cooperation with the OLR throughout an investigation. Consequently, we agree with the referee's conclusion that Attorney Osicka violated both SCR 22.03(2) and SCR 22.03(6), as alleged in Count 3 of the complaint.

154

¶ 48. Attorney Osicka's second argument on appeal is that he did not violate former SCR 20:1.4(a) in his representation of B.W. He contends that former SCR 20:1.4(a) required an attorney to keep a client informed only about the status of the client's legal matter. According to Attorney Osicka, because B.W. was seeking information about only fee-related matters, former SCR 20:1.4(a) did not apply. He asserts that fee-related inquiries should be treated differently because clients have the right to seek arbitration of fee disputes through the State Bar of Wisconsin.

¶ 49. Attorney Osicka's argument ignores half of the relevant rule. It is true that former SCR 20:1.4(a) did require attorneys "to keep a client reasonably informed about the status of a matter." Even if one would interpret that clause narrowly to limit a "matter" to only the merits and progress of a legal representation, which we do not decide, B.W.'s requests for information to establish the amount of Attorney Osicka's fees and for an accounting for her prepayment of fees were clearly covered by the second clause of former SCR 20:1.4(a), which required attorneys to "promptly comply with reasonable requests for information." That clause has no modifier arguably limiting it to requests concerning "the status of a matter." Attorney Osicka had an obligation to respond to B.W.'s fee-related inquiries, even if he believed that he had earned all of the advance fees she had paid to him. His failure to respond was a violation of the rule.

¶ 50. Attorney Osicka's appellate brief makes two sanction-related arguments. First, on the assumption that he did not violate SCR 22.03(6) by failing to provide information and documents to the OLR in its investigation of the L.A. matter, he contends that his

license to practice law in Wisconsin should not be suspended for 60 days merely because he did not respond to the grievance within 20 days, as required by SCR 22.03(2). He claims that it would be unjust to impose now the sanction of suspension that would have been imposed on him if he had not cooperated before the deadline in this court's order to show cause.

¶ 51. Attorney Osicka's assumption is erroneous because we have determined that he did violate SCR 22.03(6). Moreover, this argument is yet another attempt to assert that there is no substantial violation of the cooperation rules in SCR 22.03 until this court is forced to temporarily suspend an attorney's license due to a willful failure to cooperate. The rule, however, imposes a duty to provide information within 20 days (SCR 22.03(2)) or when requested to do so by the OLR (SCR 22.03(6)). There is no prohibition from imposing a suspension for violations of these rules if the facts of the case warrant a suspension.

¶ 52. Attorney Osicka's second sanction-related argument is simply that prior case law and the ABA Standards for Imposing Lawyer Discipline support imposing a public reprimand. The only case that Attorney Osicka cites, however, is *In re Disciplinary Proceedings Against Nussberger,* 2006 WI 111, 296 Wis. 2d 47, 719 N.W.2d 501, in which we imposed a 60–day suspension on an attorney who advised his client that she could obtain additional funds from an estate if he misrepresented the amount of his fees. Attorney Osicka merely argues that his professional misconduct is not as egregious as Attorney Nussberger's misconduct, which could have resulted in criminal charges, and therefore should result in a less severe sanction. We do not find the *Nussberger* decision to be particularly helpful in this situation, however, because the circumstances and

nature of the misconduct in that case are very different from Attorney Osicka's misconduct.

¶ 53. On the other hand, the OLR contends that a 60–day suspension of Attorney Osicka's license to practice law in this state is supported by this court's policy of progressive discipline and certain aggravating factors. For instance, the OLR contends that in Attorney Osicka's prior disciplinary proceeding he was found in multiple instances to have failed to keep his client reasonably informed, in violation of former SCR 20:1.4(a), just as he did here with respect to B.W. Moreover, his failure to cooperate with the OLR's investigation caused additional work for the OLR staff. Further, the OLR points to the frustration and anger that B.W. expressed because of Attorney Osicka's failure to respond to her inquiries.

¶ 54. The OLR cites two disciplinary matters as support for a 60–day suspension: Public Reprimand of Ross R. Kinney, 2005–09, and Public Reprimand of Donald Hahnfeld, 2003–07. Although both of these matters were consensual public reprimands, the OLR contends that Attorney Osicka should receive a 60–day suspension because of his prior public reprimand in 2002.

¶ 55. We do not believe that either one of these two consensual public reprimands supports imposing a suspension on Attorney Osicka. Both cases cited by the OLR involved situations in which an attorney was found to have pursued claims or propounded factual positions that were without basis or that were pursued merely to harass or maliciously injure another. We have determined, however, based on the referee's findings, that Attorney Osicka cannot be found to have violated SCRs 20:3.1(a)(1) or 20:3.1(a)(2). Thus, those cases are

not helpful in determining the appropriate sanction for Attorney Osicka's professional misconduct.

¶ 56. Although it is this court's general policy to impose progressive discipline, we conclude that a public reprimand is the appropriate discipline in this case. The only violations found by the referee were a temporary failure to cooperate with the OLR and a failure to respond to a client's requests for information about an advance fee. While these violations are not insignificant, we do not believe that they justify a suspension of Attorney Osicka's license to practice law in this state.

¶ 57. Two recent consensual public reprimands provide support for imposing a public reprimand in this case. In Public Reprimand of Michael W. Steinhafel, 2008–04, Attorney Steinhafel, among other things, affirmatively misrepresented the status of an action to the client on several occasions, failed to respond to the client's repeated attempts to communicate, failed to provide a file to a client, failed to return any portion of a client's advance fee payment, and failed to cooperate with the OLR's grievance investigation. In Public Reprimand of James Moldenhauer, 2008–01, Attorney Moldenhauer had previously received a public reprimand and was found to have failed to close an estate diligently, to have failed to obey a court order, and to have failed to communicate with his client. The two violations actually committed by Attorney Osicka appear to be no more severe than the misconduct by Attorneys Steinhafel and Moldenhauer that supported public reprimands.

¶ 58. In addition to the imposition of a public reprimand, we determine that Attorney Osicka should be required to pay $150 in restitution to B.W. The referee believed that this was appropriate given the fact that the evidence showed that Attorney Osicka had

158

spent at most only $450 worth of time on B.W.'s representation. Attorney Osicka has not challenged that part of the referee's recommendation, and we adopt it.

¶ 59. Finally, we conclude that Attorney Osicka should be responsible for paying the full costs of this disciplinary proceeding, less any amounts related to the OLR's motion for reconsideration/clarification of the referee's original recommendation. The OLR's motion and the referee's amended recommendation were necessitated by the referee's error of law in recommending a sanction that is not available under our case law. Because of this error, the referee has indicated that he did not include any charges for the preparation of the amended recommendation, and the OLR has indicated that it is not seeking reimbursement for the $377.50 that it expended in counsel time and disbursements for its motion for reconsideration/clarification. According to the OLR's initial statement of costs, the total costs of this proceeding prior to Attorney Osicka's appeal were $10,493.67. Subtracting the $377.50 from that amount would show pre-appeal costs in the amount of $10,116.17. The OLR's supplemental statement of costs indicates that the OLR incurred an additional $2,384.47 in costs related to Attorney Osicka's appeal, as of January 21, 2009. We note that Attorney Osicka has not objected to the OLR's statements of costs.

¶ 60. IT IS ORDERED that Tim Osicka is publicly reprimanded for his professional misconduct.

¶ 61. IT IS FURTHER ORDERED that within 60 days of the date of this order, Tim Osicka pay to the Office of Lawyer Regulation the costs of this proceeding, less the $377.50 incurred in connection with the motion for reconsideration/clarification filed by the Office of Lawyer Regulation. If the costs are not paid

within the time specified and absent a showing to this court of his inability to pay the costs within that time, the license of Tim Osicka to practice law in Wisconsin shall be suspended until further order of the court.

¶ 62. IT IS FURTHER ORDERED that within 60 days of the date of this order, Tim Osicka shall pay restitution to client B.W. in the amount of $150. If restitution to B.W. is not paid within the time specified and absent a showing to this court of his inability to pay the restitution amount within that time, the license of Tim Osicka to practice law in Wisconsin shall be suspended until further order of this court.

¶ 63. IT IS FURTHER ORDERED that restitution to client B.W. is to be completed prior to paying costs to the Office of Lawyer Regulation.

¶ 64. ANN WALSH BRADLEY, J., did not participate.