DAVID T. PROSSER, J.
¶ 40. (dissenting). Attorney Tim Osicka (Osicka) is not an angel. He has been disciplined on several occasions. Nonetheless, after looking at his recent prosecutions, one has to wonder whether Osicka's conduct warrants the zealous attention it has consistently received from the Office of Lawyer Regulation (OLR), or whether Osicka has simply become an easy target because he can no longer afford to defend himself. Osicka understands from experience that, unless he prevails on every allegation of misconduct against him, he will be required to pay all or substantially all costs of the OLR prosecution.
¶ 41. This policy has troubled me for years. The supreme court must be vigilant in protecting the public from attorneys who do not comply with the ethical obligations of the legal profession. But not all violations of the code of professional responsibility are equal in importance. Some violations are mala in se, others are merely mala prohibitum. Given its limited resources, *670 OLR should give priority to the former and balance to the latter. In my view, it has not met that test in this case.
¶ 42. I write separately to discuss some background facts that put this mala prohibitum prosecution in perspective.
I
¶ 43. Osicka was the subject of a public reprimand in 2002. Public Reprimand of Tim Osicka, No. 2002-02. My concern here is not with that prosecution but rather with four later efforts to prosecute him, of which this is the third.
A
¶ 44. "In 2009 this court publicly reprimanded Attorney Osicka for willfully failing to disclose information to the OLR during a grievance investigation and failing to comply promptly with a client's requests for information." Per Curiam op., ¶ 4 (citing In re Disciplinary Proceedings Against Osicka, 2009 WI 38, 317 Wis. 2d 135, 765 N.W.2d 775). This is true. What the Per Curiam does not explain is that the OLR filed four counts against Osicka and sought to suspend his license for 60 days. Although OLR failed to prove two of its four counts, the referee still recommended a 60-day suspension. Osicka was thus forced to appeal to this court. This court reduced the sanction to a public reprimand but socked Osicka with $10,116.17 in OLR costs. Osicka also had to pay for his own attorney. In short, Osicka had to pay the full costs of his defense and almost all costs of the OLR prosecution, even though he substantially prevailed. This was a crippling burden for a sole practitioner.
*671 ¶ 45. The critical events in the present case occurred in November 2008 during the OLR's prosecution of the 2009 disciplinary matter.
B
¶ 46. "In 2010 this court publicly reprimanded Attorney Osicka for failing to deposit a client's advance fee into a client trust account, failing to communicate adequately with his client, failing to either refund the unearned portion of an advance fee or provide an accounting to the client upon termination of representation, and engaging in the unauthorized practice of law by practicing law when his law license was suspended for nonpayment of State Bar dues." Per Curiam op., ¶ 4 (citing Public Reprimand of Tim Osicka, No. 2010-OLR-7). Osicka claims that he provided little or no defense to these charges because of the high cost of defending himself.
¶ 47. With respect to this second of the four recent disciplinary matters, it should be noted that violations of the old trust account rule, with respect to advance fees, were commonplace among criminal defense attorneys and others whose work on cases quickly exhausted the advance fees. In fact, this court created an alternative to the standard trust account rule in response to the old rule's inflexibility. Although Osicka was found to have violated the old trust account rule, he was not required to refund any money to his client, implying that he had earned the whole advance fee.
¶ 48. The count involving the unauthorized practice of law — from October 31, 2008, through November 21, 2008 — covers the critical period in the present case. Osicka claimed then that he sent a check to the State Bar office on November 3, 2008, for his dues payment. *672 In the 2010 discipline case, the referee wrote: "There [is] no indication that the State Bar received Osicka's letter and the check was not negotiated." This language does not constitute a finding that Osicka never sent such a check, nor does it rule out the possibility that Osicka's check bounced because of insufficient funds.
C
¶ 49. In the present case, Osicka is found to have violated a revised version of the trust account rule, and he is subjected to "progressive" discipline. However, Osicka's new violation preceded the 2010 discipline as well as the 2009 discipline, and he is putting up no defense. He is once again defaulting, at least in part, to avoid costs.
¶ 50. The present prosecution also involves violations of SCR 20:1.5(a) and SCR 20:1.16(d).
¶ 51. Rule 20:1.5(a) provides in part: "A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses." SCR 20:1.5(a). The Per Curiam sums up this count, saying that "by accepting a $750 [advance] fee for a representation he did not complete, Attorney Osicka charged an unreasonable fee." Per Curiam op., ¶ 18. Here is the rest of the story. Osicka was retained by A.L. in September 2008 before he was told that he had been suspended for failing to pay his bar dues. Thereafter, he worked conscientiously to represent A.L.'s daughter and negotiated a consent decree with the district attorney for the benefit of the daughter. Paragraphs 6-12 of the Per Curiam show that Osicka's problems stemmed from his failure to timely pay his bar dues, not because he overcharged his client or did not diligently represent his client. Osicka paid his bar dues on November 21, *673 2009, by credit card. If, on November 21, the circuit court had accepted the consent decree as it had been negotiated, or if the court had rescheduled the hearing without appointing a new lawyer, there would have been no problem. It was the circuit court's discretionary action that prevented Osicka from completing the representation.
¶ 52. On the third count, the referee concluded that Osicka violated a rule by failing to refund unearned fees, and Osicka was ordered to refund A.L.'s $750. This means that the referee determined that Osicka earned nothing for all his work and that because of the circuit court's decision to oust Osicka from the case, Osicka was required to refund his entire advance fee. This may be fair to A.L., who was forced to pay twice for the same service, but it was not fair to Osicka who is denied payment for service he performed.
¶ 53. The lesson to be learned from these counts is twofold: (1) always pay your bar dues on time, and (2) always defend yourself if you have a defense. For Osicka, however, the legitimacy of this response is affected by the costly result of his 2009 discipline. Now he is ordered to pay another $1,579.97 in costs in this case.
D
¶ 54. A fourth prosecution is pending. It was filed on February 25, 2013. This third prosecution was filed January 11, 2012, concerning events that occurred largely before the 2009 discipline. As the Per Curiam notes, Osicka's law license "is currently suspended for noncompliance with continuing legal education (CLE) requirements, for nonpayment of bar dues, for failing to comply with the trust account certification require *674 ment, and for failing to cooperate with the OLR's investigation." Per Curiam op., ¶ 3.
¶ 55. The plain truth is that OLR knew Osicka had closed his law office and moved out of it no later than September 2011. In December 2011 OLR filed a sworn affidavit from one of its investigators alleging, on information and belief, that "Osicka has ceased practicing law." Thus, OLR knew Osicka had ceased practicing law before filing this case and before filing the fourth prosecution.
II
¶ 56. Why is OLR continuing to file charges against an attorney who has ceased practicing law? Why is it piling up legal costs that it expects Osicka to pay?
¶ 57. These prosecutions raise questions about how OLR uses its limited resources to protect the public interest — questions about its priorities.
¶ 58. Because the answers to questions of this sort are seldom addressed, I feel compelled to respectfully dissent.