# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2018AP1837-D |

| | |
|---|---|
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Scott F. Anderson, Attorney at Law:<br><br>Office of Lawyer Regulation,<br>      Complainant,<br>   v.<br>Scott F. Anderson,<br>      Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST ANDERSON

| | |
|---|---|
| OPINION FILED: | October 28, 2020 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | |
|   COUNTY: | |
|   JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
| Per Curiam. | |
| NOT PARTICIPATING: | |

| | |
|---|---|
| ATTORNEYS: | |

**2020 WI 82**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2018AP1837-D

STATE OF WISCONSIN        :        IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Scott F. Anderson, Attorney at Law:**

**Office of Lawyer Regulation,**

      **Complainant,**

  **v.**

**Scott F. Anderson,**

      **Respondent.**

**FILED**

**OCT 28, 2020**

Sheila T. Reiff
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1 PER CURIAM. We review the report of Referee Kim Peterson in which she found that Attorney Scott F. Anderson had committed six counts of professional misconduct with respect to his handling of two client matters. The referee recommended that Attorney Anderson's license to practice law in this state be suspended for a period of 30 days. Upon careful review of the matter, we uphold the referee's findings and fact and conclusions of law. Rather than a 30-day suspension, we conclude that a 60-day license suspension is an appropriate

sanction for Attorney Anderson's misconduct. We further agree that Attorney Anderson should be required to pay the costs of this proceeding, which are $19,339.98 as of June 11, 2020.

¶2 Attorney Anderson was admitted to practice law in Wisconsin in 1985 and practices in Milwaukee. In 1991 he received a consensual private reprimand. Private reprimand No. 1991-13 (electronic copy available at https://compendium. wicourts.gov/app/raw/000038.html). In 2004, he received a consensual public reprimand for misconduct arising out of three cases. Public Reprimand of Scott F. Anderson, No. 2004-05 (electronic copy available at https://compendium.wicourts. gov/app/raw/002075.html). In 2005, he received a second consensual public reprimand. Public Reprimand of Scott F. Anderson, No. 2005-06 (electronic copy available at https://compendium.wicourts.gov/app/raw/001776.html). In 2010, Attorney Anderson's license to practice law was suspended for 60 days as a sanction for professional misconduct that included failing to file claims timely and failing to take action on his client's behalf; failing to respond to his client's reasonable requests for information and failing to communicate case developments to his client in a timely manner. In re Disciplinary Proceedings Against Anderson, 2010 WI 39, 324 Wis. 2d 627, 782 N.W.2d 100.

¶3 On September 26, 2018, the Office of Lawyer Regulation (OLR) filed a complaint alleging ten counts of misconduct arising out of two client matters. The first client matter detailed in the complaint arose out of Attorney Anderson's

2

representation of D.J., who faced felony charges in two separate Racine County cases. On March 11, 2016, the State Public Defender's Office (SPD) appointed Attorney Anderson to represent D.J. in both cases. At that time, a status conference in one case and a preliminary hearing in the second case had been scheduled for March 24, 2016.

¶4 On or about March 15, 2016, Attorney Anderson filed a Demand For Discovery and Inspection with the district attorney. Attorney Anderson did not send a copy of the discovery demand to D.J. On March 18, 2016, the SPD informed Attorney Anderson that D.J. requested to see him prior to the March 24, 2016 status conference and preliminary hearing. Attorney Anderson did not meet with D.J. D.J. was in court on March 24, 2016. The court held the scheduled hearings in both cases and set a pretrial conference for May 6, 2016. The pretrial conference was later rescheduled to June 10, 2016.

¶5 Attorney Anderson met with D.J. on April 25, 2016, for about 1 1/2 hours. On May 17 and June 3, 2016, the SPD informed Attorney Anderson about D.J.'s growing concern with the lack of communication from Attorney Anderson. Attorney Anderson was informed by the SPD that D.J. wanted to see him prior to the June 10, 2016, pretrial conference. Attorney Anderson had no communication with D.J. between his April 25, 2016 visit and the June 10, 2016 pretrial conference. D.J. was not produced for the June 10, 2016 pretrial, and Attorney Anderson did not inform him what occurred at the pretrial conference.

3

¶6   D.J. contacted the SPD to learn what had happened at the June 10, 2016 pretrial conference, to express his continued dissatisfaction with the lack of communication from Attorney Anderson, and to raise the possibility of Attorney Anderson's replacement due to his failure to timely inform D.J. about the status of his case.  On June 13, 2016, the SPD emailed Attorney Anderson about D.J.'s concerns and asked Attorney Anderson to meet with D.J.

¶7   On June 17, 2016, Attorney Anderson advised D.J. of his status conference scheduled for August 9, 2016.  Attorney Anderson did not communicate or meet with D.J. between June 17 and August 8, 2016.  In a July 27, 2016 letter to Attorney Anderson, D.J. expressed his frustration with the lack of communication, asked about the status of the discovery demand, requested an in-person meeting, and again raised the possibility of Attorney Anderson's withdrawal.

¶8   On August 8, 2016, Attorney Anderson met with D.J. for an hour.  D.J. requested that Attorney Anderson file three separate motions, and he requested that Attorney Anderson file a Miranda-Goodchild motion or otherwise challenge, via interlocutory appeal, the circuit court's earlier ruling permitting the use of D.J.'s statements at trial.  Finally, D.J. requested Attorney Anderson have an investigator interview two witnesses and obtain the co-defendant's plea/cooperation agreement.

¶9   Other than the demand for discovery filed on March 15, 2016, Attorney Anderson never filed any motions or appeals on

4

D.J.'s behalf. Until October 11, 2016, Attorney Anderson did not explain to D.J. why he had not filed any motions or appeals. Attorney Anderson never had witnesses interviewed and never obtained a copy of the co-defendant's plea/cooperation agreement.

¶10 At the August 9, 2016 status conference, the circuit court set a final pretrial date for October 17, 2016, and it scheduled the jury trial for November 1, 2016. Between August 9, 2016, and October 4, 2016, Attorney Anderson had no communication with D.J. and took no action to prepare the case.

¶11 In August 2016, D.J. requested Attorney Anderson to timely respond as to whether he had filed the requested motions concerning discovery, the suppression of evidence, and the Miranda-Goodchild motion. D.J. inquired whether an investigator had interviewed witnesses or if the co-defendant's video statement had been reviewed. Attorney Anderson did not respond.

¶12 On September 18, 2016, D.J. filed his own motion requesting that the court "withdraw legal counsel."

¶13 On October 11, 2016, Attorney Anderson informed D.J. he would not file any of the motions. Previously, Attorney Anderson had never discussed with D.J. why he did not file any of the motions D.J. had requested.

¶14 At the October 17, 2016 final pretrial conference, D.J.'s request to have Attorney Anderson removed was denied. On October 18, 2016, Attorney Anderson forwarded D.J. a plea offer which expired on October 28, 2016. Attorney Anderson promised to meet with D.J. "to discuss it and all other matters."

5

Attorney Anderson did not communicate or meet with D.J. between October 18 and October 28, 2016.

¶15  On October 20, 2016, due to Attorney Anderson's lack of communication and diligence, D.J. attempted to negotiate a plea directly with the district attorney.  On October 28, 2016, D.J. again unsuccessfully requested the circuit court to appoint a new attorney.

¶16  On October 30, 2016, Attorney Anderson reviewed the transcript from D.J.'s Miranda-Goodchild hearing.  On October 31, 2016, the day before trial, Attorney Anderson finally requested from the district attorney any plea/cooperation agreement of the co-defendant, asked to compare discovery, and informed the district attorney he would be filing a motion to withdraw.

¶17  On November 1, 2016, D.J. entered a no contest plea in one of the Racine County cases.  Attorney Anderson withdrew as D.J.'s counsel prior to sentencing.

¶18  The OLR's complaint alleged the following counts of misconduct with respect to Attorney Anderson's representation of D.J.:

> **Count 1:**  By failing to timely consult with D.J. about the Miranda-Goodchild motion or interlocutory appeal, by failing to timely advise D.J. he would not file the requested motions or interview witnesses, and by failing to timely consult with D.J. about additional discovery D.J. believed to be outstanding, Attorney Anderson violated SCR 20:1.4(a)(2).[1]

---

[1] SCR 20:1.4(a)(2) provides:  "A lawyer shall reasonably consult with the client about the means by which the client's objectives are to be accomplished."

**Count 2:** By failing to timely communicate with D.J. on defense strategy and the status of D.J.'s case, Attorney Anderson violated SCR 20:1.4(a)(3).[2]

**Count 3:** By failing to timely respond to D.J.'s reasonable requests for information, Attorney Anderson violated SCR 20:1.4(a)(4).[3]

**Count 4:** By failing to diligently follow up with the district attorney regarding his discovery demand, by failing to timely review the transcript from D.J.'s Miranda-Goodchild hearing so as to provide D.J. an informed opinion on the merits of refiling the Miranda-Goodchild motion or pursuing an interlocutory appeal, and by failing to timely request the co-defendant's plea/cooperation agreement, Attorney Anderson violated SCR 20:1.3.[4]

¶19 The remaining counts of misconduct detailed in the OLR's complaint arose out of Attorney Anderson's representation of J.H., who had been charged with first-degree reckless injury and attempted first-degree intentional homicide. Although represented by the SPD, J.H. requested to proceed pro se. The request was granted, and Attorney Anderson was appointed as standby counsel to assist J.H. in his defense.

¶20 J.H. was also awaiting sentencing in another case in which he had been charged with being a felon in possession of a firearm, among other charges. Attorney Anderson was also appointed as standby counsel in that case.

---

[2] SCR 20:1.4(a)(3) provides: "A lawyer shall keep the client reasonably informed about the status of the matter."

[3] SCR 20:1.4(a)(4) provides: "A lawyer shall promptly comply with reasonable requests by the client for information."

[4] SCR 20:1.3 provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

¶21 At the March 10, 2016 pretrial conference in the homicide case, J.H. informed the court he had a handwritten witness list, a discovery motion, a motion in limine, and one other partially drafted motion he wanted to file that day. The court specifically ordered Attorney Anderson to get J.H. the discovery and assist him in filing "the motions and everything that [J.H. needed] to get filed here." The court instructed Attorney Anderson to get copies of the various motions to everyone promptly.

¶22 Hearings for J.H.'s motions in the homicide case and his sentencing in the firearm case were scheduled for April 15, 2016. On that date, J.H. was sentenced in the firearm case.

¶23 In the homicide case, between March 10 and April 15, 2016, Attorney Anderson did not prepare, file, or distribute J.H.'s motions and witness list. Attorney Anderson acknowledged on the record that he had received J.H.'s motions, and he said he would have the documents prepared and filed within 10 days. On April 22 and April 27, 2016, Attorney Anderson billed for reviewing "Client Prepared Docs" and "Prep of Discovery Demand." No motions were filed or ever prepared and given to J.H. for review.

¶24 At the April 28, 2016 status conference in the homicide case, a pretrial conference was scheduled for August 1, and a jury trial was scheduled for August 29, 2016. On April 28, 2016, Attorney Anderson told J.H. he would visit him the following week, but did not do so.

8

¶25 On May 5, 2016, the district attorney sent Attorney Anderson six pages of additional discovery. Between May 5 and August 1, 2016, Attorney Anderson did not provide J.H. with the additional discovery, nor did he advise J.H. he had received it.

¶26 On May 17, 2016, J.H. informed Attorney Anderson he had the ability to prepare the motions and witness list himself, and he asked Attorney Anderson to return his handwritten documents. J.H. also requested "a letter stating that I am on a deadline for any motions that I will file." J.H. said he needed the deadline letter "as soon as possible" to acquire time in the prison's law library to prepare his various motions. J.H. also asked Attorney Anderson to prepare a "petition" permitting him to "colloquy" with all witnesses, which witnesses J.H. believed would be subpoenaed by the court. Attorney Anderson did not respond to J.H.'s letter, did not prepare the motions, did not return the handwritten documents, and did not provide J.H. with the deadline letter. Attorney Anderson took no action on J.H.'s case between May 25 and August 1, 2016. On June 2, 2016, J.H. again requested return of the handwritten documents and the deadline letter, and he requested that Attorney Anderson visit him. Attorney Anderson did not respond.

¶27 On June 12, 2016, J.H. contacted the Milwaukee County Clerk of Court requesting information about the deadline for filing his motions, and he was told to contact his standby counsel. On June 17, 2016, J.H. contacted Attorney Anderson for the filing deadline letter so he could prepare his motions. Attorney Anderson did not respond.

9

¶28 On June 21, 2016, J.H. provided Attorney Anderson with drafts of several motions and an alibi statement. J.H. wanted Attorney Anderson to file the motions because his access to the law library had been denied due to his not receiving the deadline letter. Attorney Anderson did not respond to J.H. and did not file the motions.

¶29 On July 11, 2016, J.H. filed a second request for discovery, seeking the same documents Attorney Anderson had received from the district attorney on May 5, 2016.

¶30 At the August 1, 2016 pretrial conference, J.H. informed the court he still had not received all of the discovery and requested the dismissal of Attorney Anderson. The assistant district attorney informed the court the discovery had been given to Attorney Anderson on May 5, 2016. The OLR alleged that Attorney Anderson falsely represented to the court the discovery had been sent to J.H. J.H.'s request to dismiss Attorney Anderson was denied, and a final pretrial conference was scheduled for August 25, 2016.

¶31 On or about August 14, 2016, J.H. requested that Attorney Anderson draft and file a motion regarding witness identification. Attorney Anderson did not respond to the letter, take the requested action, or advise J.H. why the action might be unwarranted.

¶32 Attorney Anderson never issued subpoenas for J.H.'s witnesses, nor did he advise J.H. how to subpoena the witnesses himself.

¶33 J.H. was not produced for the August 25, 2016 final pretrial conference. J.H. filed five motions on the morning of the trial. The circuit court commented that J.H. had had since May 2016 to file the motions. Attorney Anderson failed to disclose to the court that his lack of diligence prevented J.H.'s motions and witness list from being timely filed. The court denied J.H.'s motion to subpoena his witnesses as untimely. Attorney Anderson denied he ever received J.H.'s witness list.

¶34 On September 1, 2016, J.H. was convicted, and sentencing was scheduled for September 27, 2016. At the sentencing hearing, Attorney Anderson requested to withdraw. J.H. asserted Attorney Anderson misrepresented information to the court and said that on March 10, 2016 he had given Attorney Anderson numerous motions and a witness list to file. Attorney Anderson denied he was " . . . even on the case" at that time, even though he had been appointed on March 10, 2016.

¶35 The OLR's complaint alleged the following counts of misconduct with respect to Attorney Anderson's representation of J.H.:

> **Count 5:** As standby counsel, by failing to advance J.H.'s interests in timely preparing and filing J.H.'s motions, by failing to file J.H.'s witness list, by failing to provide J.H. with the motion deadline letter to facilitate J.H.'s use of the prison library, and by failing to timely provide J.H. with the discovery documents he received in May 2016, Attorney Anderson violated SCR 20:1.3.

11

**Count 6:** By failing to inform J.H. that he had received additional discovery documents in May 2016, Attorney Anderson violated SCR 20:1.4(a)(3).

**Count 7:** By failing to timely respond to J.H.'s reasonable requests for information regarding this case, Attorney Anderson violated SCR 20:1.4(a)(4).

**Count 8:** By failing to advise J.H. he did not intend to file any motions, failing to advise J.H. on the legitimacy of any of the requested motions and failing to advise J.H. on the defense's obligations and the procedures to subpoena a witness for trial, so as to allow J.H., in each instance, to make informed decisions about the defense of his case, Attorney Anderson violated SCR 20:1.4(b).[5]

**Count 9:** By making false and misleading statements to the court about having provided all discovery materials to J.H., about draft filings J.H. had given to him and by stating to the court he wasn't on the case on March 10, 2016, Attorney Anderson violated SCR 20:3.3(a)(1).[6]

**Count 10:** By making false and misleading statements to the OLR about his receipt of discovery materials, about having provided all discovery materials to J.H., and about his receipt of motions from J.H., Attorney

---

[5] SCR 20:1.4(b) provides: "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

[6] SCR 20:3.3(a)(1) provides: "A lawyer shall not knowingly make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."

Anderson violated SCR 22.03(6),[7], enforceable via SCR 20:8.4(h).[8]

¶36 The referee was appointed on December 7, 2018. Attorney Anderson filed an answer to the OLR's complaint on December 18, 2018. A three-day evidentiary hearing was held in December 2019.

¶37 In her report, the referee found that the OLR had met its burden of proof as to counts 1 through 3 and 5 through 7. The referee found that the OLR did not prove by clear and convincing evidence that Attorney Anderson failed to diligently follow up with the assistant district attorney about the discovery demand in D.J.'s case, failed to timely review the transcript of the Miranda-Goodchild hearing or pursue an interlocutory appeal on that matter, or failed to timely request the co-defendant's plea/cooperation agreement. The referee found that prior to trial, Attorney Anderson had continued negotiations and discussions with the assistant district attorney on D.J.'s case and had reviewed the transcript from the

---

[7] SCR 22.03(6) provides: "In the course of the investigation, the respondent's willful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance."

[8] SCR 20:8.4(h) provides: "It is professional misconduct for a lawyer to fail to cooperate in the investigation of a grievance filed with the office of lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(2), SCR 22.03(6), or SCR 22.04(1)."

earlier Miranda-Goodchild hearing. The referee noted that Attorney Anderson asserted the motions requested by D.J. were not necessary or appropriate.

¶38 With respect to Attorney Anderson's representation of J.H., the referee noted that Attorney Anderson was appointed standby counsel only, and she pointed out Wisconsin has not specifically addressed the issue of whether standby counsel owes an ethical obligation to the defendant he or she is assisting. The referee said it seems logical that a limited attorney-client relationship was formed when J.H. asked Attorney Anderson to perform certain tasks and when the circuit court asked Attorney Anderson to be prepared to take over J.H.'s defense at trial if requested to do so. The referee reasoned that in order to accomplish those tasks, Attorney Anderson would have to act with diligence so that he could be informed about the case prior to trial and communicate with J.H. about the tasks that were requested.

¶39 The referee found that Attorney Anderson did not violate Supreme Court Rules when he failed to inform J.H. about how to subpoena witnesses or when he failed to send additional discovery documents to J.H. since those discovery documents were already in J.H.'s possession and there was no evidence presented indicating the documents were important to help J.H. prepare his case for trial. The referee said that J.H. had already received discovery from prior counsel, who had prepared the case for trial before having to withdraw. The referee also noted that

J.H. had received a complete set of discovery at the pretrial conference.

¶40 The referee agreed with the OLR that Attorney Anderson failed to communicate with both of his clients. The referee said the record was replete with letters that both D.J. and J.H. sent to Attorney Anderson desperately seeking information about their cases. Both clients wrote to Attorney Anderson and asked to meet with him on several occasions. They wrote asking about specific motions they wanted filed, and Attorney Anderson ignored most of those letters and requests for information. While Attorney Anderson acknowledged he could have been better at communicating, he said that often the information sought by the clients was not particularly important. The referee said, "by failing to report to his clients the status of their cases, even to simply to report that there was no new information, his clients were left to wonder what was happening in their cases, often resulting in even more questions and correspondence."

¶41 The referee said even when Attorney Anderson did communicate with his clients about trial and defense strategies, the communication was often not effective. The referee said the lack of communication was especially harmful to J.H. because he was trying to represent himself and needed Attorney Anderson's assistance. The referee said both clients had significant interests at stake in their cases, and J.H. was facing life in prison, so the clients understandably wanted a lawyer who would help them, fight for them, and take their cases seriously, which

15

required an attorney who would listen and respond to them. Attorney Anderson failed to do so.

¶42 The referee found that the OLR did not meet its burden of proving that Attorney Anderson made misrepresentations to the circuit court in J.H.'s case. While the OLR asserted that Attorney Anderson falsely informed the circuit court he had given all the discovery to J.H. when in fact he did not send J.H. the inventory control sheets he had received from the assistant district attorney, the referee said that Attorney Anderson testified that J.H. had already received all of the discovery in the case from prior counsel including the inventory control sheets. The referee said there was no evidence that Attorney Anderson was knowingly trying to mislead the circuit court, and although he arguably could have been clearer in explaining the specifics of the discovery J.H. had received, that alone did not demonstrate a violation of the Rules of Professional Conduct.

¶43 With respect to the appropriate sanction, the referee noted that the OLR sought a 120-day license suspension, while Attorney Anderson argued for a public reprimand. The referee concluded that a 30-day license suspension was an appropriate sanction. She said Attorney Anderson's conduct was disrespectful and unprofessional, causing his clients unnecessary concern and distress. The referee also said Attorney Anderson exhibited a pattern of failing to communicate with clients, and a license suspension was appropriate to impress upon him that his conduct is unacceptable and needs to

16

be corrected. The referee found as a mitigating factor that Attorney Anderson has accepted responsibility for his conduct. The referee also noted that Attorney Anderson works in a difficult environment representing indigent defendants in high stakes criminal cases. She said she was confident that a 30-day suspension would give Attorney Anderson time to reflect and adjust his practice to ensure he will better respond to his clients' needs in the future.

¶44 We adopt the referee's findings of fact and conclusions of law as to Attorney Anderson's professional misconduct. As to the appropriate sanction, we conclude that a 60-day suspension, rather than the 30-day suspension recommended by the referee, is an appropriate sanction.

¶45 With rare exceptions, this court has adhered to a policy of imposing a minimum license suspension of 60 days. See In re Disciplinary Proceedings Against Osicka, 2009 WI 38, ¶38, 317 Wis. 2d 135, 765 N.W.2d 775; In re Disciplinary Proceedings Against Grady, 188 Wis. 2d 98, 108-09, 523 N.W.2d 564 (1994); In re Disciplinary Proceedings Against Schnitzler, 140 Wis. 2d 574, 577-78, 412 N.W.2d 124 (1987). ("We conclude that a minimum 60-day period of suspension serves the needs of the public and of the legal system when a lawyer's license is suspended for disciplinary reasons.") We see no reason to depart from that general policy here, particularly since this is the fifth occasion on which Attorney Anderson is being sanctioned for professional misconduct, and he has already received one 60-day suspension.

17

¶46 Wisconsin generally adheres to the idea of progressive discipline. As the referee appropriately noted, it has been 10 years since Attorney Anderson's previous 60-day suspension; however, the 2010 suspension involved misconduct that was similar in many respects to the misconduct at issue here: failure to respond to his client's reasonable requests for information and to communicate case developments to his client in a timely manner. Although the referee found that Attorney Anderson has expressed remorse and accepted responsibility for his conduct, it does not appear that he took the lessons of the 2010 suspension to heart. If the previous suspension were not a decade old, we may well have considered a suspension longer than 60 days. Under the circumstances, we conclude that a suspension shorter than 60 days would unduly depreciate the nature of the misconduct.

¶47 Finally, as is our normal practice, we find it appropriate to assess the full costs of the proceeding against Attorney Anderson. The OLR does not seek restitution and we impose none.

¶48 IT IS ORDERED that the license of Scott F. Anderson to practice law in Wisconsin is suspended for a period of 60 days, effective December 9, 2020.

¶49 IT IS FURTHER ORDERED that within 60 days of the date of this order, Scott F. Anderson pay to the Office of Lawyer Regulation the costs of this proceeding, which are $19,339.98 as of June 11, 2020.

18

¶50  IT IS FURTHER ORDERED that Scott F. Anderson shall comply with SCR 22.26 regarding the duties of a person whose license to practice law in Wisconsin has been suspended.