# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2022AP645-D |

| | |
|---|---|
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Crystal L. Saltzwadel, Attorney at Law: |
| | Office of Lawyer Regulation, Complainant, v. Crystal L. Saltzwadel, Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST SALTZWADEL

| | |
|---|---|
| OPINION FILED: | June 28, 2022 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | |
| COUNTY: | |
| JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
| Per Curiam. | |
| NOT PARTICIPATING: | |

| | |
|---|---|
| ATTORNEYS: | |

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2022AP645-D

STATE OF WISCONSIN      :      IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Crystal L. Saltzwadel, Attorney at Law:**

**Office of Lawyer Regulation,**

     **Complainant,**

     **v.**

**Crystal L. Saltzwadel,**

     **Respondent.**

**FILED**

**JUN 28, 2022**

Sheila T. Reiff
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1 PER CURIAM. The Office of Lawyer Regulation (OLR) and Attorney Crystal L. Saltzwadel have filed a stipulation pursuant to Supreme Court Rule (SCR) 22.12 agreeing that Attorney Saltzwadel's license to practice law in Wisconsin should be suspended for 60 days for professional misconduct she committed in connection with five client matters. After reviewing the matter, we approve the stipulation, adopt the stipulated facts and conclusions of law, and impose the

stipulated discipline. Given the comprehensive stipulation, which avoided the need to litigate this matter and to appoint a referee, we impose no costs in connection with this proceeding.

¶2 Attorney Saltzwadel was admitted to practice law in Wisconsin in 2007. In February 2020, this court imposed a public reprimand upon Attorney Saltzwadel for misconduct in six client matters, including her failure to act with reasonable diligence and promptness; failure to keep clients reasonably informed about the status of their cases and respond to requests for information; and failure to provide the OLR timely responses to client grievances. Public Reprimand of Crystal L. Saltzwadel, No. 2020-3 (electronic copy available at https://compendium.wicourts.gov/app/raw/003129.html).

¶3 On April 18, 2022, the OLR filed another complaint against Attorney Saltzwadel alleging 11 counts of misconduct in five client matters. The misconduct in this matter is similar to the misconduct that gave rise to her 2020 public reprimand. Attorney Saltzwadel failed to file a timely notice of intent to pursue postconviction relief (NOI) on behalf of four clients and failed to respond to inquiries from the four clients and others on their behalf about the status of their cases. She also failed to meaningfully engage with defense counsel in a separate federal case who sought to shorten their mutual client's time of incarceration and she failed to provide that client with a copy of his revocation decision.

2

¶4 The first two counts of misconduct relate to Attorney Saltzwadel's representation of A.W. In 2019, the Office of the State Public Defender (SPD) appointed Attorney Saltzwadel to represent A.W. in a criminal case involving one misdemeanor and two felonies. A.W. was found guilty of all charges and was sentenced to three years of initial confinement followed by two years of extended supervision. At his sentencing hearing, A.W. and Attorney Saltzwadel signed a NOI, indicating that A.W. intended to seek postconviction relief.

¶5 On March 5, 2020, Attorney Saltzwadel sent A.W. a letter stating that she had filed the NOI on his behalf, her representation of him had ended, and that the SPD would appoint him an appellate attorney. A.W. did not receive Attorney Saltzwadel's letter, possibly because he was moved among different correctional facilities. However, A.W. and his family repeatedly tried to contact Attorney Saltzwadel by telephone regarding his appeal. They received no response from her.

¶6 Eventually, A.W. filed a grievance with the OLR. In July 2020, the OLR informed Attorney Saltzwadel of the grievance and that it appeared no NOI had been filed on A.W.'s behalf. Attorney Saltzwadel told the OLR she had filed a NOI and a motion for extension of time to file a NOI on A.W.'s behalf. However, the copy of the document she provided to the OLR was not file stamped by the court. Attorney Saltzwadel said she believed she had timely filed the NOI. That day, Attorney Saltzwadel sent a letter to A.W. informing him she would file his NOI immediately. Again, A.W. did not receive Attorney

3

Saltzwadel's letter; he was still moving among correctional facilities.

¶7 On August 17, 2020, the SPD received a letter from A.W. asking for appointment of appellate counsel for his upcoming "appeal hearing filed by Attorney Crystal L. Saltzwadel." On August 27, 2020, the SPD advised A.W. that no NOI had yet been filed on A.W.'s behalf.

¶8 On October 2, 2020, the court of appeals received a NOI together with an extension motion filed by Attorney Saltzwadel on A.W.'s behalf. The court granted the motion and retroactively extended the deadline, permitting A.W. to file his NOI. However, Attorney Saltzwadel was unable to explain the discrepancy between her assertion to the OLR that she had filed the NOI on July 7, 2020, and the court's documented receipt of the NOI some three months later.

¶9 The next count of misconduct pertains to Attorney Saltzwadel's representation of S.H. On March 12, 2019, the SPD appointed Attorney Saltzwadel to represent S.H. on two felonies. In October 2019, S.H. was found guilty on both felonies, and she was later sentenced to ten years of initial confinement followed by five years of extended supervision. At sentencing, S.H. and Attorney Saltzwadel signed a NOI, which indicated S.H.'s intent to seek postconviction relief.

¶10 After sentencing, S.H. and her mother contacted Attorney Saltzwadel to confirm that a NOI had been filed. Attorney Saltzwadel claimed that a NOI had been filed and that S.H. would hear from her appellate counsel within 60 days.

¶11 In January 2020, S.H. learned the NOI had not been filed. On January 10, 2020, Attorney Saltzwadel received an email from a supervisor at the SPD who informed Attorney Saltzwadel that S.H. and her family had been inquiring about appellate counsel but it appeared no NOI had been filed. The SPD urged Attorney Saltzwadel to file the NOI immediately. Attorney Saltzwadel took no steps to file a NOI for S.H. after receiving this email.

¶12 On January 28, 2020, Attorney Saltzwadel received a follow-up email from the SPD. Shortly thereafter, another attorney with the SPD filed the NOI, along with a motion to extend the deadline for S.H. to file an appeal. Later that same day, Attorney Saltzwadel emailed the SPD and claimed she did not know what had happened to the NOI and that she had a printed copy in her file. Attorney Saltzwadel also sent a letter to S.H., stating that she had believed S.H.'s NOI was filed the day of the sentencing hearing, but she had learned this was not the case.[1] Attorney Saltzwadel's letter further stated that the NOI had now been filed, as well as a motion to extend the deadline to file an appeal. On February 3, 2020, the court of appeals retroactively extended the deadline, permitting S.H. to file a NOI.

¶13 S.H. filed a grievance against Attorney Saltzwadel and the OLR commenced an inquiry. Attorney Saltzwadel told the OLR that when she returned to her office after S.H.'s sentencing

---

[1] S.H. did not receive Attorney Saltzwadel's letter; it was sent to the wrong address for inmate correspondence.

hearing, she signed into the efiling system and uploaded the NOI and that she was "unaware that the notice was never submitted."

¶14 The next allegations of misconduct pertain to Attorney Saltzwadel's representation of S.J. On September 9, 2019, the SPD appointed Attorney Saltzwadel to represent S.J. in three ongoing criminal cases involving six felonies. In October 2019, S.J. was convicted of five felonies. S.J. was sentenced to six years of initial confinement and six years of extended supervision. That same day, S.J. and Attorney Saltzwadel signed a NOI for each of the three cases, reflecting S.J.'s intent to seek postconviction relief.

¶15 On April 12, 2020, S.J. contacted the SPD's office expressing concern because he had learned that Attorney Saltzwadel had not filed the NOIs and he had received no information about his appeal. S.J. told the SPD that he had written to Attorney Saltzwadel but she had not responded.

¶16 The SPD emailed Attorney Saltzwadel on numerous occasions about S.J. Attorney Saltzwadel told the OLR she believed she had electronically filed the NOIs shortly after the sentencing hearing, but had no explanation for why they were not filed. She claimed that she would file all three NOIs and that she would request extensions of time to file those documents.

¶17 On June 5, 2020, Attorney Saltzwadel belatedly filed all three NOIs on S.J.'s behalf, but failed to request an extension of the filing deadline. On July 22, 2020, another SPD attorney filed a petition for a writ of habeas corpus on S.J.'s behalf, alleging that Attorney Saltzwadel was ineffective for

6

failing to timely file the NOIs on S.J.'s behalf, and thus successfully obtained reinstatement of S.J.'s appellate rights.

¶18 The next client matter in this proceeding involves Attorney Saltzwadel's representation of M.J. On November 13, 2019, M.J. was convicted of two felonies and one misdemeanor. M.J.'s trial counsel withdrew shortly thereafter and Attorney Saltzwadel was appointed by the SPD as successor counsel. After sentencing, a NOI was prepared, indicating that M.J. intended to seek postconviction relief.

¶19 In May 2021, M.J. contacted the SPD's office expressing concern because he had learned his NOI had not been filed. M.J. said he had attempted to contact Attorney Saltzwadel personally and through third parties, using email and voicemails, but she had not responded.

¶20 In June 2021, the SPD contacted Attorney Saltzwadel and informed her that M.J.'s NOI had not been filed. Attorney Saltzwadel said she would need to consult her file to see what happened. In August 2021, after several more follow-up inquiries from the SPD, Attorney Saltzwadel replied that she had a NOI in her file and did not know why it was not filed with the court. On September 3, 2021, Attorney Saltzwadel told the SPD she would file the NOI. On September 16, 2021, Attorney Saltzwadel finally filed a NOI on M.J.'s behalf.

¶21 On September 20, 2021, another attorney with the SPD successfully filed a petition for a writ of habeas corpus on M.J.'s behalf, alleging that Attorney Saltzwadel was ineffective

7

for failing to timely file the NOI and thus successfully obtained reinstatement of M.J.'s appellate rights.

¶22 Attorney Saltzwadel told the OLR that immediately after the sentencing hearing, she told M.J.'s family that the NOI had been filed and that M.J. did not have to continue the appeal process if he didn't want to. Attorney Saltzwadel told the OLR she was not aware that she had failed to successfully file the NOI.

¶23 The final client matter at issue here involves T.S.Y. As pertinent background, in 2011 T.S.Y. had been convicted of a felony and sentenced to 30 months of initial confinement followed by 48 months of extended supervision. In 2014, T.S.Y. was convicted of another felony and sentenced to nine months of confinement to run consecutive to his 2011 sentence. In January 2016, T.S.Y. was released from prison and his term of extended supervision began.

¶24 In July 2019, while on extended supervision, T.S.Y. was the subject of a traffic stop where he was found to have a loaded firearm, drugs, drug paraphernalia, and a large amount of cash. He had not reported for supervision in three years. The SPD appointed Attorney Saltzwadel to represent T.S.Y. on criminal charges stemming from the traffic stop and on the revocation proceeding regarding his extended supervision.

¶25 In November 2019, T.S.Y. was indicted on three federal criminal charges stemming from the July 2019 traffic stop. Federal defense counsel was appointed to represent T.S.Y. in the

federal criminal case. Pending state criminal charges were dismissed on November 13, 2019.

¶26 On November 6, 2019, T.S.Y.'s revocation hearing was held and, by order dated November 20, 2019, T.S.Y.'s extended supervision was revoked and he was ordered to be confined for three years and six days. Attorney Saltzwadel was emailed a copy of the revocation decision that same day. T.S.Y. had until December 5, 2019 to administratively appeal his revocation.

¶27 Five days after the revocation hearing, during an email exchange with the federal defense attorney, Attorney Saltzwadel told the federal defense attorney that she was still awaiting T.S.Y.'s revocation decision.

¶28 On December 2, 2019, T.S.Y. made his initial appearance in the federal case. The next day, his federal defense attorney sent Attorney Saltzwadel an email asking that she "try to pump the brakes on the revocation decision" because the five year minimum sentence from the federal charge would run consecutive to any sentence imposed in the revocation proceeding. He explained that it was "pretty important to get this [federal charge] addressed before the [state] revocation decision is issued."

¶29 Minutes after receiving this email, Attorney Saltzwadel responded, "Decision just came. Revoked for 2 years 9 months and 22 days. We can appeal but that rarely changes anything. I will call the PO to see if there is anything else we can do." However, because Attorney Saltzwadel did not disclose that the revocation decision had actually issued on

9

November 20, 2019, federal defense counsel did not know that T.S.Y.'s administrative appeal deadline would expire on December 5, 2019; he believed there was still time to work something out for T.S.Y.'s benefit.

¶30 On December 5, 2019, federal defense counsel told T.S.Y. about his adverse revocation decision. T.S.Y. had not known that his revocation decision had issued some two weeks earlier. He had not received a copy of the decision from Attorney Saltzwadel and had heard nothing from her after November 13, 2019, despite having left voicemails for her.

¶31 On December 12, 2019, federal defense counsel sent Attorney Saltzwadel the following email:

> I left you a VM. Please get back to me on this. I've discussed with the federal prosecutor the possibility of having [T.S.Y.'s] revocation dropped if he resolves this case. They are open to the idea. This would be a favorable outcome, but seeing that the deadline on the administrative appeal is next week Monday or Tuesday, time is of the essence. Please provide me with the name and contact info for [T.S.Y.'s] agent.

Attorney Saltzwadel never responded to this email. In late 2020, T.S.Y. entered into a plea agreement in which he was convicted of one of the federal charges and the two other charges were dismissed. He was sentenced to nine months in prison to run concurrently with the revocation sentence in his state criminal matter.

¶32 During the ensuing OLR investigation, Attorney Saltzwadel told the OLR that she received a copy of the revocation decision and promptly mailed a copy to T.S.Y. She

told the OLR she did not recall receiving any voicemails from T.S.Y. or his family.

¶33 Based on all of the foregoing, the OLR alleged and Attorney Saltzwadel has stipulated that:

- By failing to timely submit notices of intent to pursue postconviction relief on behalf of A.W., S.H., S.J., and M.J., Attorney Saltzwadel violated SCR 20:1.3[2] (Counts One, Three, Four, and Six).

- By failing to respond to inquiries from A.W., S.J., M.J., T.S.Y., and others on their behalf about the status of their appeals, Attorney Saltzwadel violated SCR 20:1.4(a)(4)[3] (Counts Two, Five, Seven, and Ten).

- By failing to meaningfully engage with federal defense counsel for T.S.Y. in his attempts to shorten T.S.Y.'s time of incarceration, Attorney Saltzwadel violated SCR 20:1.3 (Count Eight).

- By failing to timely provide T.S.Y. with a copy of his revocation decision, Attorney Saltzwadel violated SCR 20:1.4(a)(3) (Count Nine).[4]

- By telling federal defense counsel on November 25, 2019 that she was still awaiting T.S.Y.'s revocation decision

---

[2] SCR 20:1.3 provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

[3] SCR 20:1.4(a)(4) provides: "A lawyer shall promptly comply with reasonable requests by the client for information."

[4] SCR 20:1.4(a)(3) provides: "A lawyer shall keep the client reasonably informed about the status of the matter."

11

and by telling him on December 3, 2019 that the decision "just came," Attorney Saltzwadel violated SCR 20:8.4(c) (Count Eleven).[5]

¶34 On May 9, 2022, the OLR and Attorney Saltzwadel filed a stipulation pursuant to SCR 22.12 in which Attorney Saltzwadel stipulated to each of the eleven counts set forth in the OLR's complaint. The OLR filed a memorandum in support of the stipulation.

¶35 In the stipulation, Attorney Saltzwadel agrees that the facts alleged in the OLR's complaint form a basis for the requested discipline. She represents and verifies that she fully understands the ramifications should this court impose the stipulated level of discipline; that she fully understands her right to contest this matter; that she fully understands her right to consult with counsel; that her entry into the stipulation is made knowingly and voluntarily; and that her entry into the stipulation represents her decision not to contest the allegations in the complaint or the level and type of discipline sought by the OLR's Director. The parties assert that the stipulation was not the result of plea bargaining.

¶36 The parties ask this court to impose a 60-day suspension on Attorney Saltzwadel's law license. The OLR's memorandum in support of the stipulation cites to three cases in support of the recommended 60-day suspension. In _In re_

---

[5] SCR 20:8.4(c) provides: "It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

*Disciplinary Proceedings Against Theobald*, 2010 WI 102, 329 Wis. 2d 1, 786 N.W.2d 834, we imposed a 60-day suspension for two counts of misconduct in one client matter, which included failing to take a series of steps resulting in the dismissal of the client's bankruptcy petition and failing to respond to the client's inquiries regarding the status of the bankruptcy. Attorney Theobald's disciplinary history included two prior public reprimands for similar misconduct. In deeming this case instructive, the OLR notes that Attorney Saltzwadel also has a prior public reprimand and her misconduct is similar to that of Attorney Theobald, as it involves failing to act with reasonable diligence and promptness, failing to keep clients reasonably informed about the status of their matters, and failing to comply with reasonable request for information. See also *In re Disciplinary Proceedings Against Moldenhauer*, 2016 WI 43, 369 Wis. 2d 1, 879 N.W.2d 605 (imposing a 60-day suspension for two counts of misconduct that included failing to act with reasonable diligence and promptness, failing to keep clients reasonably informed about the status of their matters, and failing to comply with reasonable requests for information where Attorney Moldenhauer had previously received a private reprimand and two public reprimands for similar conduct).

¶37 The OLR also deems instructive *In re Disciplinary Proceedings Against Anderson*, 2020 WI 82, 394 Wis. 2d 190, 950 N.W.2d 191. There, the attorney received a 60-day suspension for six counts of misconduct in two client matters. His misconduct involved failing to consult with a client about the

13

means by which objectives were to be accomplished, failing to act with reasonable diligence and promptness, failing to keep clients reasonably informed about the status of their matters, and failing to comply with reasonable requests for information. Attorney Anderson had previously received a private reprimand, two public reprimands, and a 60-day suspension. The OLR argues that the Anderson case is similar to Attorney Saltzwadel's as it involves failing to act with reasonable diligence and promptness, failing to keep clients reasonably informed about the status of their matters, and failing to comply with reasonable requests for information.

¶38 We have some concerns that a 60-day license suspension is inadequate for the misconduct Attorney Saltzwadel committed in this manner, which involves five clients and 11 counts of misconduct, including a violation of SCR 20:8.4(c) for making misrepresentations to another attorney representing their mutual client. However, we acknowledge that the OLR has advised us that Attorney Saltzwadel has fully admitted responsibility for her misconduct, and convincingly espoused her understanding of the need to avoid repeating it. The OLR asserts that a suspension of more than 60 days is not merited here. Therefore, although the cases cited by the OLR are not precisely on point because of factual differences and generally less serious misconduct, we are persuaded that a 60-day suspension of Attorney Saltzwadel's license to practice law in Wisconsin is an appropriate level of discipline for this case.

14

¶39 Henceforth, we expect Attorney Saltzwadel to demonstrate that she has a proper understanding of and attitude toward the standards that are imposed upon members of the bar in this state and that she will act in conformity with those standards. Attorney Saltzwadel is reminded that this court may impose progressively severe sanctions when an attorney engages in repeated misconduct. See, e.g., In re Disciplinary Proceedings Against Netzer, 2014 WI 7, ¶49, 352 Wis. 2d 310, 841 N.W.2d 820 ("[t]his court has long adhered to the concept of progressive discipline in attorney regulatory cases.") We accept the stipulation and impose a 60-day suspension of Attorney Saltzwadel's license to practice law in Wisconsin.

¶40 We turn to the issue of costs. The OLR's complaint requested the court impose the costs of the proceeding. However, because this matter has been resolved by means of a stipulation without the appointment of a referee, we do not impose costs upon Attorney Saltzwadel. The OLR does not seek restitution and no restitution is ordered.

¶41 IT IS ORDERED that the license of Crystal L. Saltzwadel to practice law in Wisconsin is suspended for 60-days, effective August 9, 2022.

¶42 IT IS FURTHER ORDERED that Crystal L. Saltzwadel shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶43 IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement. See SCR 22.28(2).

1