In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 21-1566

TIM OSICKA,

*Plaintiff-Appellant,*

*v.*

OFFICE OF LAWYER REGULATION,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 20-cv-478-jdp — **James D. Peterson**, *Chief Judge.*

———————————

ARGUED NOVEMBER 16, 2021 — DECIDED FEBRUARY 7, 2022

———————————

Before BRENNAN, SCUDDER, and JACKSON-AKIWUMI, *Circuit Judges.*

SCUDDER, *Circuit Judge.* In an issue of first impression for our court, Tim Osicka challenges a bankruptcy court's ruling that the costs of his attorney disciplinary proceedings imposed by the Wisconsin Supreme Court were not dischargeable under a provision of the Bankruptcy Code, 11 U.S.C. § 523(a)(7). The district court upheld the ruling, and we affirm.

# I

## A

In 2009 the Wisconsin Office of Lawyer Regulation commenced disciplinary proceedings against Tim Osicka. A referee ruled that Osicka engaged in "professional misconduct" in violation of the Wisconsin Supreme Court's Rules of Professional Conduct by failing both to respond to client grievances and to cooperate with an investigation into his work for those same clients. See Wis. S.C.R. 20:8.4(f); 20:1.4(a); 22.001(9)(a); 22.03(2), (6). As for the appropriate sanction, the referee found that Osicka's offense was aggravated by this most recent misconduct following a public reprimand for similar shortcomings in 2002. On the mitigation side, the referee observed that Osicka's misconduct reflected negligence, not intentional wrongdoing. See Wis. S.C.R. 22.24(1m). Further observing that the Wisconsin Supreme Court follows a policy of "progressive discipline," the referee recommended temporary suspension of Osicka's license, restitution of $150 to a client, and imposition of the full cost of his disciplinary proceedings—$12,878.14. See *In re Disciplinary Proceedings Against Osicka*, 765 N.W.2d 775, 783, 787 (Wis. 2009).

Osicka appealed aspects of the recommendation to the Wisconsin Supreme Court. The Court reduced Osicka's suspension to a public reprimand, but upheld the restitution and the cost order, reducing the amount of costs to $12,500.64. See *id.* at 787–88. When Osicka failed to pay the costs by the prescribed deadline, the State Bar of Wisconsin suspended his license.

In 2011 Osicka closed his law practice and filed for Chapter 7 bankruptcy protection. See 11 U.S.C. § 727. He

listed the OLR as an unsecured creditor to which he owed $12,500 in "fees," and, for its part, the OLR did not challenge the requested discharge. When Osicka received a general discharge, he believed it covered his debt to the OLR. But that understanding changed when he later petitioned the Wisconsin Supreme Court for readmission to the state bar, only to learn that the OLR required payment of the disciplinary costs before recommending reinstatement. See *In re Osicka*, No. 11-15541-7, 2020 WL 2516492, at *1–*2 (Bankr. W.D. Wis. May 15, 2020).

In 2019 Osicka reacted to these developments by moving to reopen his bankruptcy case and then filing an adversary proceeding against the OLR. The Wisconsin Supreme Court placed Osicka's reinstatement petition on hold pending the outcome of that litigation. See *id.* at *1.

B

In the proceedings that followed, Osicka contended that his prior bankruptcy had discharged his disciplinary costs because the exception to dischargeability in 11 U.S.C. § 523(a)(7) did not apply. See 11 U.S.C. § 727(b). In his view, the costs—though owed to a government unit—were not a "fine, penalty, or forfeiture" within the meaning of § 523(a)(7), and instead served only to compensate the OLR for the expense it incurred in the underlying disciplinary proceeding against him.

The bankruptcy court disagreed and entered summary judgment for the OLR. Relying on the Supreme Court's decision in *Kelly v. Robinson*, 479 U.S. 36, 50, 52 (1986), the bankruptcy court concluded that the purpose of the cost order was "not simply compensation for pecuniary loss" because the

Wisconsin Supreme Court "intended to penalize Osicka un-
der the context of the disciplinary proceeding." *In re Osicka*,
2020 WL 2516492, at \*4–\*5.

From there the bankruptcy court invoked our decision in
*In re Zarzynski*, 771 F.2d 304, 306 (7th Cir. 1985), and explained
that setting the penalty at the amount of costs incurred by the
OLR in the disciplinary proceeding did not "convert" those
costs into a form of compensation for the OLR. In no way, the
bankruptcy court reasoned, did the OLR suffer any pecuniary
loss while performing its "critical public function" of holding
Wisconsin attorneys like Osicka accountable for their miscon-
duct. *In re Osicka*, 2020 WL 2516492, at \*5. To the contrary, the
bankruptcy court saw the cost order as furthering the state's
"penal and rehabilitative interests" and thus as part and par-
cel of the other punishment, including the Wisconsin Su-
preme Court's public reprimand of Osicka. In the end, then,
the bankruptcy court concluded that the cost order was a non-
dischargeable "penalty" under the exception Congress sup-
plied in § 523(a)(7). *Id.* at \*5–\*6. So the court closed the Chap-
ter 7 case.

Osicka then sought review in the district court. See 28
U.S.C. § 158(a). Much like the bankruptcy court, the district
court relied on *In re Zarzynski* and rejected the contention that
the costs were compensatory just because they were, in
Osicka's words, in the "exact dollar amount" of the OLR's ex-
penditures for his disciplinary proceedings. The district court
added that it made little sense to think of the OLR as experi-
encing any "actual pecuniary loss" within the meaning of
§ 523(a)(7) because in no way did Osicka's misconduct inflict
financial harm on the Wisconsin Supreme Court or the OLR.
The district court further emphasized that the Court imposed

those costs only after the referee weighed "culpability fac-
tors," much like a court imposes a cost order or fine in crimi-
nal proceedings. In short, the district court concluded that
Osicka's debt to the OLR was not dischargeable under
§ 523(a)(7).

Osicka now appeals.

## II

### A

We begin, as we must, with the language Congress used
in § 523(a)(7). See *Caraco Pharm. Labs., Ltd. v. Novo Nordisk A/S*,
566 U.S. 399, 412 (2012). By its terms, the provision creates a
dischargeability exception "to the extent [the] debt [in ques-
tion] is for a fine, penalty, or forfeiture payable to and for the
benefit of a governmental unit, and is not compensation for
actual pecuniary loss, other than a [particular] tax penalty."
11 U.S.C. § 523(a)(7).

The parties agree that Osicka owes the debt to a unit of
government, the Wisconsin Office of Lawyer Regulation, so
the only question is whether the cost order satisfies the other
statutory criteria.

We start with whether the cost order is a form of a "fine,
penalty, or forfeiture" within the meaning of § 523(a)(7). Con-
gress did not define these terms. So we are left to give them
their ordinary meanings, informed by the context in which
they operate both within § 523(a)(7) and other provisions of
the Bankruptcy Code. See *Niz-Chavez v. Garland*, 141 S. Ct.
1474, 1480 (2021).

Looking to the end of the statutory list, we have a hard
time seeing the cost order as any form of "forfeiture." The

edition of *Black's Law Dictionary* in place as of the last amendment of § 523(a)(7) in 2019 tells us that "forfeiture" is the "loss of a right, privilege, or property because of a crime, breach of obligation, or neglect of duty," *Forfeiture (2)*, Black's Law Dictionary (11th ed. 2019). Courts have likewise tended to construe forfeiture as entailing an offender's return of "guilty property" to its rightful owner or custodian. *United States v. Bajakajian*, 524 U.S. 321, 330 (1998). Although the Wisconsin Supreme Court conditioned reinstatement of Osicka's law license on the payment of his disciplinary costs, the costs themselves were based on the OLR's expenses, not the losses Osicka caused any clients. It is difficult for us to believe that the term "forfeiture" encompasses the cost order entered by the Wisconsin Supreme Court.

Moving on to Congress's use of the term of "fine" in § 523(a)(7). A fine is "[a] pecuniary criminal punishment or civil penalty payable to the public treasury." *Fine (5)*, Black's Law Dictionary (11th ed. 2019). On this understanding of "fine"—as a form of punishment—it is not clear what differentiation Congress intended between "fine" and "penalty," as those terms appear in § 523(a)(7). See *United States v. Melvin*, 948 F.3d 848, 852 (7th Cir. 2020) (explaining that different language ordinarily conveys different meaning). Indeed, it is easy to see the cost order as a form of a fine payable to an arm of state government, as the Wisconsin Supreme Court imposed the order only after the OLR found that Osicka had engaged in professional misconduct. On the other hand, Osicka is right to suggest that courts historically have not treated cost orders and fines as one and the same for all purposes.

We need not resolve the question, though, as it is plain the cost order is a "penalty" within the meaning of § 523(a)(7). A penalty is a "[p]unishment imposed on a wrongdoer" that can take the form of a "sum of money exacted as punishment for either a wrong to the state or a civil wrong." *Penalty (1)*, Black's Law Dictionary (11th ed. 2019). Although there are several types of proceedings in which the Wisconsin Supreme Court may order costs, see Wis. S.C.R. 22.24(1), attorney discipline uniquely requires a "finding of misconduct" as a precondition for doing so. Wis. S.C.R. 22.24(1m). That rule also grants referees the discretion to set the cost order after weighing culpability factors—including the nature of the misconduct, the number of charges, the attorney's disciplinary history, and the attorney's cooperation. See *id*.

The structure of Rule 22.24(1m) unambiguously singles out attorney discipline as a penal endeavor. And that conclusion has a statutory consequence under § 523(a)(7). The Supreme Court emphasized in *Kelly* that § 523(a)(7) creates a "broad exception" to dischargeability for all "penal sanctions." 479 U.S. at 51. And in Osicka's case, the referee imposed costs only after assessing various aggravating and mitigating factors:

- Osicka's failure both to respond to client grievances and to cooperate with an investigation into his work for those clients;

- Osicka's commission of four instances of similar professional misconduct seven years earlier;

- Osicka's display of a "negative, unremorseful attitude" throughout the 2009 disciplinary proceeding; and

- On the mitigation side, "no evidence of a dishonest or selfish motive in the misconduct."

*In re Disciplinary Proceedings Against Osicka*, 765 N.W.2d at 777, 781–83; see also Wis. S.C.R. 22.24(1m). After doing so, the Court "conclude[d] that Attorney Osicka should be responsible" for paying the costs of the proceeding, less the costs of a motion made by the OLR, and entered an order to that effect. *In re Disciplinary Proceedings Against Osicka*, 765 N.W.2d at 787–88.

Going further, we cannot conclude that the cost order amounts to "compensation for actual pecuniary loss" under 11 U.S.C. § 523(a)(7). Osicka argues that disciplinary costs are nothing but compensatory because they "defray" the OLR's operating expenses, and, as he pressed at oral argument, his cost order reflects the OLR's expenses "to the penny." We are not convinced.

The incurrence of operating expenses to prosecute a disciplinary investigation is not an actual pecuniary loss. "Loss" is "[t]he disappearance or diminution of value, usu[ally] in an unexpected or relatively unpredictable way." *Loss (1)*, Black's Law Dictionary (11th ed. 2019). An "actual loss" is a "loss resulting from the real and substantial destruction of … property." *Actual Loss*, Black's Law Dictionary (11th ed. 2019). And a "pecuniary loss" is a "loss of money or something having monetary value." *Pecuniary Loss*, Black's Law Dictionary (11th ed. 2019). Reading these definitions together, an actual pecuniary loss is the

disappearance or diminution of something having monetary value resulting from the real and substantial destruction of property, which usually occurs in an unexpected or relatively unpredictable way and often because of another's misconduct. Fraud is the classic example.

The OLR's use of its operating budget to investigate and prosecute attorneys for potential malfeasance falls outside of this definition. This is because the OLR simply expended money that it had already allocated "in the furtherance of its public responsibilities," *In re Zarzynski*, 771 F.2d at 306, which include "disciplinary investigations and actions." Wis. Stat. § 20.680(3)(h). The OLR's use of its operating budget neither resulted in the disappearance or diminution of value, nor the real and substantial destruction of property. It was instead "an expenditure by the government, part of the expense of governing" that was not undertaken "expecting to create a debtor-creditor relationship"—the exact use of the funds contemplated by Wisconsin law. *In re Zarzynski*, 771 F.2d at 306; see also Wis. Stat. § 20.680(3)(h).

B

Our conclusion that Osicka's disciplinary costs are nondischaregable under 11 U.S.C. § 523(a)(7) finds firm support in Supreme Court precedent and our own case law.

The cost order is of a type that the Supreme Court has identified as punitive rather than compensatory. In *Kelly*, the Court excepted from discharge under § 523(a)(7) a broad category of penal sanctions imposed as part of a criminal sentence and that further the state's "interests in rehabilitation and punishment." 479 U.S. at 51–53. Osicka's cost order shares these purposes: he was offered

reinstatement if he paid his disciplinary costs or continued suspension if he did not. And he was sanctioned in accordance with the OLR's mandate to "supervise the practice of law and protect the public from misconduct by persons practicing law in Wisconsin." *Lawyer Regulation*, https://www.wicourts.gov/services/public/lawyerreg/process .htm (last visited Feb. 7, 2022); see also Wis. S.C.R. 21.12 (stating that the OLR maintains the "integrity of the lawyer regulation system").

Osicka's insistence that *Kelly* applies only to criminal penalties likewise fails. What he overlooks is the Supreme Court's express extension of its holding in *Kelly* to the civil context. In *Pennsylvania Department of Public Welfare v. Davenport*, the Court understood *Kelly* to exempt from discharge "both civil and criminal fines." 495 U.S. 552, 562 (1990). And in *Cohen v. de la Cruz*, the Court upheld the nondischargeability of a fine levied by a rent-control administrator on a landlord for violating a local ordinance. 523 U.S. 213, 220–21 (1998). Indeed, the Court reiterated that § 523(a)(7) "connot[es] broadly any liability arising from" penalties for misconduct. *Id.* at 220; see also *In re Towers*, 162 F.3d 952, 954–56 (7th Cir. 1998) (applying *Kelly* to civil restitution orders).

Supreme Court precedent also supports the conclusion that the OLR did not suffer actual pecuniary loss. The Court has read § 523(a)(7) to encompass both fines not strictly based on harm and restitution orders "in the amount of the harm caused," provided they are imposed for "rehabilitation and punishment." *Kelly*, 479 U.S. at 51–53. That is exactly what happened here: the OLR imposed the penalty of a cost order in the amount of the expenses incurred in the underlying investigation. It did not, by doing so, "convert" the penalty

into compensation because the punitive and rehabilitative purposes of the cost order remain. *In re Zarzynski*, 771 F.2d at 306; see *Kelly*, 479 U.S. at 53. The cost order is therefore akin to the monetary sanctions federal courts routinely impose on vexatious litigants, which also "survive[] the bankruptcy case." *Law v. Siegel*, 571 U.S. 415, 427 (2014); see also *Alpern v. Lieb*, 11 F.3d 689, 690 (7th Cir. 1993) (excepting attorney disciplinary proceedings from automatic stays in bankruptcy).

Adhering to *Kelly*, we also understand § 523(a)(7) to prevent discharge of Osicka's cost order because it was a punishment and did not make the OLR whole for actual loss. In *In re Zarzynski*, we held—albeit in an abbreviated manner—that criminal prosecution expenses are "part of the expense of governing," and are not undertaken with the expectation of creating a debtor-creditor relationship between the party sanctioned and the state because investigation and prosecution are among the state's existing public responsibilities and are paid out of its regular expenditures. 771 F.3d at 306. Osicka faced disciplinary costs under the Wisconsin Supreme Court's policy of progressive discipline, which includes "monetary payment" among penalties that "may be imposed on an attorney as discipline for misconduct." Wis. S.C.R. 21.16(1m). He attempts to challenge that policy, but his argument is unavailing because it rests on an inapposite concurring opinion, *In re Disciplinary Proceedings Against Konnor*, 694 N.W.2d 376, 386–87, 392–93 (Wis. 2005) (Abrahamson, C.J., concurring), which merely considers the adoption of clearer criteria for modifying cost orders.

Finally, every other circuit to have confronted the question presented has come to the same conclusion. See, *e.g.*, *In re Albert-Sheridan*, 960 F.3d 1188, 1192–93 (9th Cir. 2020); *In re Feingold*, 730 F.3d 1268, 1275 (11th Cir. 2013); *Richmond v. N.H. Supreme Court. Comm. on Prof'l Conduct*, 542 F.3d 913, 920–21 (1st Cir. 2008).

Bankruptcy courts in our circuit likewise have found no contradiction between punishing attorney misconduct and measuring that punishment based on the government's expenses. See, *e.g.*, *In re Netzer*, 545 B.R. 254, 259–61 (Bankr. W.D. Wis. 2016); *In re Betts*, 149 B.R. 891, 896 (Bankr. N.D. Ill. 1993). Indeed, such a method responds to *Kelly*'s directive to "tailor[]" remedies to "the defendant's situation." 479 U.S. at 53.

For these reasons, we AFFIRM.